## R. A. BLANDFORD v. THE STATE.

1. INTERNATIONAL EXTRADITION.— TREATIES between the United States
   and foreign nations are obligatory upon and cognizable by the tri-
   bunals of the several States as well as those of the Federal govern-
   ment.  In the administration of the criminal law of this State,
   therefore, it is incumbent on the State courts to give effect to the
   provisions of the extradition treaty between the United States and
   Mexico when they are invoked by the accused and are applicable to
   his case.
2. SAME — EXTRADITION TREATY WITH MEXICO.— EMBEZZLEMENT of
   "public moneys " is one of the crimes for which reciprocal extra-
   dition is stipulated by the extradition treaty of Mexico with the
   United States; but funds of a private incorporation are not " pub-
   lic moneys," and the treaty repudiates any right to extradite an
   embezzler of private property or money.
3. SAME — CASE STATED.— Appellant was extradited to Texas from
   Mexico on a requisition charging him with theft (one of the offenses
   enumerated in the extradition treaty between the United States and
   Mexico), but prior to his extradition he was indicted in T. county,
   Texas, for embezzlement of private funds, which is an offense not
   enumerated in the treaty.  Pleading to the jurisdiction of the
   court, he alleged that the offense for which he was placed on trial
   was not the offense for which he had been extradited nor one pro-
   vided for in the said extradition treaty.  Held, that the court
   below erred in sustaining a motion to strike out the plea, notwith-
   standing it is a plea unknown to our Code of Criminal Procedure.
   See the opinion in extenso for an exposition of the doctrine of in-
   ternational extradition and of the extradition treaty between the
   United States and Mexico.

APPEAL from the District Court of Travis.  Tried be-
low before J. H. BURTS, Esq., Special Judge.

On October 12, 1880, the grand jury of Travis county
presented an indictment which charged that the appel-
lant, on September 4, 1879, was the secretary of the
Austin Home Building and Loan Association, an incor-
porated company, and as such was in possession of $5,100,
currency of the United States and the property of said
Association; and that he "did then and there, with in-
tent to defraud, unlawfully and fraudulently embezzle and

fraudulently misapply and convert said money to his, the said Blandford's, own use and benefit, without the consent of the said Austin Home Building and Loan Association or any member thereof; contrary to law," etc.

On November 26, 1880, the defendant filed under oath his plea to the jurisdiction of the court. By full and specific allegations this plea averred that on October 18, 1880, when the defendant was a resident of the Republic of Mexico and not of the State of Texas, and was quietly and lawfully pursuing his daily avocations and business in the Republic of Mexico, he was by force and arms arrested under and by virtue of an extradition warrant issued by one Gregorio Soto, extradition agent of the Bravo line between the State of Tamaulipas, in the Republic of Mexico, and the State of Texas; which extradition warrant was based on the requisition of one James M. Haynes, who was then and there county judge of the county of Cameron in the State of Texas, and an extradition agent, in and for said county, for all such purposes and with all such powers as were conferred on him by law and by a commission issued to him by his Excellency O. M. Roberts, Governor of the State of Texas, dated February 26, 1880, and which said requisition bears date on or about October 16, 1880. That, being so seized and arrested by virtue of said extradition warrant, he, the defendant, was forcibly removed from the Republic of Mexico and against his will transported into the county of Cameron and State of Texas, where he was delivered to the sheriff of that county, who transported him to Travis county and there he has been kept in jail. That the requisition on which he was extradited was based on the allegation that he was charged before a justice of the peace of Travis county with the theft of fifty dollars from the Austin Home Building and Loan Association, and his arrest and extradition were for the sole purpose of placing him on trial on said charge of theft; and he

alleged his then readiness for trial upon that charge, but, on the contrary, the indictment to which this plea is interposed charges him with embezzlement of $5,100 from the said Association on September 4, 1879, and was presented by the grand jury on October 12, 1880. That the treaty between the United States and the Republic of Mexico imposed no obligation on the latter or its agents or authorities to issue an extradition warrant for the arrest of any one charged with embezzlement as aforesaid; and no extradition warrant would have issued upon such a charge. That defendant was not extradited to answer the charge of embezzlement preferred against him by the indictment in this case, and, at the time of his arrest and extradition, no charge was pending against him except that of theft on which he was extradited. That he has never been legally extradited to answer this indictment nor the accusation preferred by it, and his trial thereon would be in violation of the constitutions and laws of Texas and of the United States, the law of nations and the treaty between the United States and Mexico, and in bad faith to the Republic of Mexico, which has never delivered him up or consented to deliver him up to answer the charge alleged against him in said indictment.

The plea concluded with a prayer for such orders and process as would secure to him the benefit of all accessible documents relative to his extradition, and for his discharge without trial upon the indictment in this cause.

On December 3, 1880, the county attorney appeared in behalf of the State and moved to strike out the defendant's plea to the jurisdiction of the court, because the plea was a nullity, being unauthorized and prohibited by law. Exception for insufficiency was also taken to the plea, and a replication denying certain of the allegations made in it was filed. On the same day the defense moved the court to quash the indictment, because it set out no offense known to the laws of Texas.

The court below sustained the motion to strike out the defendant's plea to its jurisdiction, and overruled his motion to quash the indictment. The defense reserved exceptions to these orders of the court, and, a continuance being asked and refused, filed a plea of not guilty and a trial was had, which resulted in a verdict of conviction and the assessment of the punishment at a term of five years in the penitentiary. A new trial being refused, judgment final was entered against the defendant and he appealed.

It will be seen that the opinion of this court treats only of the matters set out and the questions raised in the plea to the jurisdiction of the court below. The evidence submitted to the jury had no relevancy to those matters. It was elaborate, consisting largely of entries in the books of the Austin Home Building and Loan Association, made therein by the defendant, its secretary, among whose duties was the receipt of money paid to the Association by its stockholders, and the payment of such money to the treasurer of the Association. Under the date of September 6, 1879, the defendant had interlined an entry to his own credit on the Ledger, viz.: "Sept. 6, 1879, To Sundries, Journal, Page 117, $5,100.00." No entries appeared in the Journal or elsewhere sustaining this credit on the Ledger, and witnesses for the State testified that they, acting in behalf of the Association, had examined the books, and, having called on the defendant for an explanation of the entry, he admitted its falsity and acknowledged that he had used the money. It appears that he offered certain land by way of restitution, and that his downfall was attributable to habits of intoxication.

*Carleton & Morris*, for the appellant. The court erred in sustaining the motion of the State to strike out appellant's plea to the jurisdiction of the court. It was the legal and constitutional right of the appellant to present his objections to the jurisdiction of the court to try the

particular charge brought against him before he could be required to plead to the truth of the charge; and this right is not destroyed because the statute does not affirmatively declare that he *may* present a plea to the jurisdiction of the court. The State moved to strike out appellant's plea to the jurisdiction, on the ground that such plea was unauthorized by the laws of Texas, but in point of fact, the statutes of Texas in no place, in terms, inhibit the presentation of such plea. Sec. 19, art. 1, Constitution of Texas; arts. 522 and 525, Code Crim. Proc.

Under the terms of the treaty between the United States of America and the Republic of Mexico in relation to the extradition of criminals, the offense of embezzlement is not made an extraditable offense, and under the recognized rules of international law persons extradited and delivered up to be tried for an extraditable offense can only be tried for that offense and no other, and the jurisdiction which so acquires the possession of an extradited person acquires jurisdiction over such person only to the extent that they may try him for the offense for which he is extradited and no other.

On the —— day of October, 1880, a complaint was filed in the office of Joseph Lee, justice of the peace in and for Travis county, Texas, charging this appellant, R. A. Blandford, with the theft of fifty dollars from the Austin Home Building and Loan Association. After the filing of said complaint against appellant, one James W. Haynes, then county judge of Cameron county, Texas, and extradition agent of the State of Texas, issued a requisition directed to one Gregorio Soto, extradition agent of the Bravo line in the Republic of Mexico, requesting him to deliver up the appellant, R. A. Blandford, to be tried for the offense of theft as set out in the complaint filed before Joseph Lee, justice of the peace of Travis county, Texas, said requisition being dated on or about October 16, 1880. The said Gregorio Soto did issue

his warrant of arrest and did, on the eighteenth day of
October, 1880, cause the said Blandford to be arrested in
the city of Matamoras, in the Republic of Mexico, and
did have him to be delivered, by virtue of said requisition
of Haynes, to one Scanlan, sheriff of Cameron county,
Texas, by whom he, said Blandford, was transported to
Austin, Travis county, Texas, and delivered to Dennis
Corwin, sheriff of Travis county, Texas.    Before the
arrest of said Blandford, to wit: on the twelfth day of
October, 1880, the grand jury of Travis county, Texas,
found an indictment against said Blandford, not for *theft
of fifty dollars*, but for *embezzlement* of the sum of *fifty-
one hundred dollars*, and to this last charge appellant,
Blandford, was called upon to answer in said District
Court of Travis county.    He filed his plea to the juris-
diction, setting up all above facts, which plea was stricken
out, and he forced to trial without having it passed upon.
Treaty between United States and Mexico, dated De-
cember 11, 1861, on pages 579 to 580 of Treaties and Con-
ventions between the United States and other powers;
U. S. Statutes at Large, Vol. 12, p. 1199; article 9 of treaty
between United States and Great Britain, dated August
9, 1842, on page 374 of "Treaties and Conventions between
the United States and other powers;" *Ham* v. *State*, 4
Texas Ct. App. 662; *Commonwealth* v. *Hawes*, 13 Bush,
697; 26 American Reports, 242; Noyes' case, U. S. Dis-
trict Court of New Jersey, reported in Albany Law Jour-
nal, 409, Vol. 16; W. B. Lawrence on Extradition, in
Albany Law Journal, 405, Vol. 14, p. 85; Spear on Extra-
dition, 200, Albany Law Journal, Vol. 16, pp. 200 and 380.

II. The court erred in overruling appellant's motion to
quash the indictment filed against him in this cause.    An
indictment charging embezzlement from any incorporated
company or institution must affirmatively allege that the
person embezzling was either an officer, agent, clerk, or
attorney at law, or attorney in fact; and without such

allegation no offense is properly or legally charged, nor can such allegation be supplied by the use of any other word which the pleader may deem synonymous.

The indictment filed in this cause does not charge that the appellant Blandford was an "officer" of the Austin Building and Loan Association, but alleges that "R. A. Blandford  *  *  *  was then and there the secretary of the Austin Home Building and Loan Association," etc., *  *  "by virtue of his position and office as secretary of said Austin Home Building and Loan Association," etc.; but does nowhere in plain and distinct terms allege that he was an officer of said Association, which it is alleged in said indictment is an incorporated company. Penal Code, art. 786; Webster's Dictionary, definition "Secretary;" Worcester's Dictionary, definition "Secretary;" *Webb* v. *State*, 8 Texas Ct. App. 310; *The People* v. *Allen*, 5 Denio, 76.

*Horace Chilton*, Assistant Attorney General, for the State.

I. The plea to the jurisdiction was unauthorized, and therefore was properly stricken out.

The Code of Criminal Procedure (art. 522) prescribes the pleas which defendants are permitted to interpose, and, to shut out misconstruction, declares that those enumerated are the only pleadings on the part of defendants.

The second subdivision of that article, if there was no further statutory limitation of its meaning, might very well be held to include a plea such as the one now under consideration, but its terms are expounded by art. 525, in which the "special pleas" of defendants are explained to mean those of former conviction and former acquittal.

II. But, independent of the formal objections to this plea, it was bad in substance.

The true rules governing international extradition, directly bearing upon the question here involved, cannot

be considered as settled, either in this country or England. The conflict, however, has been, according to my information, as to the right of a *foreign government* to insist upon the return of a delivered fugitive, after he ceases to be held for an extraditable offense. I think the American view of the subject may be stated thus:

When a fugitive has been demanded and received by the United States, in good faith and upon a real prosecution for an extraditable offense, his relation to other prosecutions, after he is brought within the territory and dominion of this country, is precisely the same as that of other persons found in our jurisdiction, and he is subject to arrest and trial, just as if he had never fled. *Adriance* v. *Lagrave*, 59 N. Y. 112.

If there be any qualification to the authority of the government against whose laws one of its own subjects has offended, but whose surrender has been secured upon another accusation, it springs from treaty regulations, and only the parties to the treaty — to wit: the sovereigns making it, — can be heard to complain of its infringement, or to assert rights thereunder. *U. S.* v. *Lawrence*, 13 Blatchf. 295; *U. S.* v. *Caldwell*, 8 Blatchf. 131.

. These decisions treat the question under discussion as one of diplomacy, and not as a right of any particular criminal who may be placed on trial. As illustrative of this doctrine, I quote from Bishop, on an analogous case:

"A foreign power cannot carry away a fugitive from its justice found within our territory, yet the fugitive himself, arriving home, could not there so take advantage of the unauthorized proceeding as to have the prosecution against him dismissed."

"Embezzlement" is not the defined name of any offense in the laws of Texas. A party indicted for theft may be convicted of embezzlement. Penal Code, art. 771 *et seq.*

III. The indictment sufficiently charged that Blandford was an officer of the Building Association.

A. It charges that he was the secretary.

B. That he came into *possession of the money by virtue* of his position and office as secretary.

C. That the Building Association was an incorporated company.

The court judicially knows that a *secretary* is an officer of a private corporation. The law so makes it. Rev. Statutes, art. 580.

HURT, J.   Blandford was extradited from the Republic of Mexico upon a charge of theft.   Before the arrest of the appellant in Mexico under and by virtue of the extradition papers, the grand jury of Travis county presented in the District Court a bill of indictment against him for the embezzlement of fifty-one hundred dollars.   He was placed upon trial upon this bill charging him with embezzlement; to which he pleaded in substance, that the court, by reason of the fact that he had not been extradited for this offense, had no right to compel him to answer thereto.   This plea was very full, setting out not only the facts clearly and distinctly, but the treaty between the Mexican and United States governments.

Upon motion of the State this plea was stricken out, and the defendant was forced to trial upon the indictment for embezzlement.   He was found guilty, and his punishment was assessed at confinement in the penitentiary for the term of five years.   Judgment being entered on the verdict, defendant appeals for relief to this court.

The correctness of the action of the court below in sustaining the motion of the State to strike out the plea depends upon what constitutes a true construction of articles first and third of the treaty between the Republic of Mexico and the United States, dated December 11th, 1861, and the proper decision of the question as to how far the judicial tribunals of the Federal and State governments are required to take cognizance of and give effect

to treaty stipulations between the foreign and home governments.

Although it is stated by Story and Kent that under the Law of Nations sovereign states are bound to deliver up persons charged with or convicted of crimes committed in the other country upon demand, this doctrine never obtained permanently in the United States. With us the doctrine has long prevailed, that the foreign government has no right to demand the surrender of a violator of its laws, unless under and by virtue of treaty stipulations. Lawrence's Wheaton on International Law, p. 233, and authorities cited; Op. of Att'y Gen'l, vol. 6, p. 431. If, then, this right of one government to demand and receive from another the custody of an offender who has sought asylum upon the soil depends upon the existence of treaty stipulations between these governments, it follows that this right to demand, receive and punish must be measured and restricted by the provisions, either expressed or implied, of the treaty. This leads us to a discussion of what constitutes a true construction of articles 1 and 3 of the treaty between Mexico and the United States.

Art. 1. "It is agreed that the contracting parties shall, on requisition made in their name through the medium of their respective diplomatic agents, deliver up to justice persons who, being accused of the crimes enumerated in art. 3d of the present treaty, committed within the jurisdiction of the requiring party, shall seek an asylum or shall be found within the territories of the other: *Provided*, that this shall be done only when the fact of the commission of the crime shall be so established as that the laws of the country in which the fugitive or the person so accused shall be found would justify his or her apprehension and commitment for trial, if the crime had been there committed."

Art. 3. "Persons shall be so delivered up who shall be charged, according to the provisions of this treaty, with

any of the following crimes, whether as principals, accessories or accomplices, to wit: Murder (including assassination, parricide, infanticide, and poisoning); assault with intent to commit murder; mutilation; piracy; assault; rape; kidnapping, defining the same to be the taking and carrying away of a free person by force or deception; forgery, including the passing or making or knowingly passing or putting in circulation counterfeit coin or bank notes, or other paper current as money, with intent to defraud any person or persons; the introduction or making of instruments for the fabrication of counterfeit coin or bank notes or other paper current as money; embezzlement of public moneys; robbery, defining the same to be the felonious and forcible taking from the person of another of goods or money to any value by violence or putting him in fear; burglary, defining the same to be breaking and entering into the house of another with intent to commit felony; and the crime of larceny of cattle, or other goods and chattels of the value of twenty-five dollars or more, when the same is committed within the frontier states or territories of the contracting parties."

It is seen that the treaty enumerates eleven well defined crimes for which a party may be extradited, and stipulates that the party shall be delivered up to justice who is accused of one of the enumerated crimes, provided that this shall be done *only* when the fact of the commission of the crime shall be so *established* as that the laws of the country in which the fugitive shall be found *would justify his apprehension and commitment for trial if the crime had been there committed.* Why this specific enumeration of the crimes,— this proviso? Does not this enumeration evidently exclude crimes not named therein? If not, why enumerate? If the maxim " *expressio unius est exclusio alterius* " does not apply here, it can never be applied to any act either of Congress or the State Legis-

latures. It would be a useless, antiquated maxim and should be expunged from legal literature. To hold that it has no application in this treaty would render treaties a snare and a delusion, a farce and a solemn fraud. This treaty negatives, by imperative necessity as patent as that there is life in nature, the right to extradite only for crimes named in the treaty, and not then until after an examination into the charge by the authorities of the government upon which the demand is made,— the charge named in the treaty or one of them and contained in the requisition. Why stipulate in solemn compact that the government upon whom the demand is made shall have the right to examine into the charge, and, if a *prima facie* case is not shown, to refuse to surrender, if after being extradited the party extradited can be forced to answer to a charge neither named in the treaty nor examined by the authorities of the government making the surrender? In exact and unequivocal language the treaty sets out the precise purpose for which the fugitive is to be surrendered, and negatives by implication as strong and conclusive as a direct and positive negation that the person surrendered may be tried for offense different from that for which he was extradited under the stipulations of the contract made between the high contracting parties. The treaty names embezzlement of public funds. The indictment in this case is for the embezzlement of private funds. But be this as it may, the principle would not be affected if the funds were public. Not having been extradited for that offense, the party could not be placed on trial therefor. As stated by Chief Justice Lindsay in *Commonwealth* v. *Hawes:* "It would present a remarkable state of case to have one government saying in substance to another,— you cannot demand the surrender of a person charged with embezzlement. My judges or other magistrates have no right or authority upon such a demand either to apprehend the

person so accused, or to inquire into the evidences of his criminality; and if they should assume to do so, and should find the evidence sufficient to sustain the charge, the proper executive authority could not lawfully issue the warrant for his surrender. But you may obviate this defect in the treaty by reciting the demand upon the charge of forgery, and if you can make out a *prima facie* case against the fugitive you may take him into custody, and then, without a breach of faith, and without violating either the letter or spirit of our treaty, compel him to go to trial upon the indictment for the non-extraditable offense of embezzlement."

All civilized nations agree on one point, and that is that they will not deliver a fugitive to be tried for political offenses, and through great caution with a view to prevent this, the sixth article of the above treaty provides among other things that "the provisions of the present treaty shall not be applied in any manner to any crime or offense of a purely political character." What supreme nonsense is this if the fugitive can be extradited for one crime and then placed on trial for another,—make a *prima facie* case of murder, extradite, and then try him for rebellion! Our conclusion is, that the party extradited must be tried, if tried at all, alone upon the charge upon which he was extradited, unless the judicial tribunals of this State have no right to take cognizance of, and give effect to treaty stipulations between our own and foreign governments. That the judiciary of this State not only has the right, but is sworn to take cognizance of and give effect to treaties, cannot be questioned. Section 2, article 6 of the Constitution declares that "this Constitution and the laws of the United States made in pursuance thereof, and all treaties made or which shall be made under the authority of the United States shall be the supreme law of the land, and the judges of every State shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."

With us, under our Constitution, a public treaty is not merely a compact or bargain to be enforced by the executive and legislative departments of the Federal government, but living laws, operating and binding the judiciary of this State, as much as the Federal and State Constitutions, or the acts of Congress or those of the State Legislature. It follows, therefore, that the judicial tribunals of this State are required to take cognizance of, and give effect to the treaties made by the Federal government with other nations, just as if they composed a part of our Criminal Code. Indeed, they stand, if made in pursuance of the Constitution, upon higher ground than our State Constitution or any act of the Legislature of this State; for, if there be a conflict, the Federal Constitution being supreme, all treaties made in pursuance thereof must of necessity be supreme. Hence in case of conflict State Constitutions and acts of the Legislature must yield. In our opinion, then, the judiciary of this State is bound to take notice of and enforce treaties, treating them as if they composed a part of our Code.

With other nations, treaties, being considered compacts, and not legislative acts, are to be carried into execution by the sovereign powers of the respective nations which are parties to the compact. This, however, is not the case in the United States, for by our Federal Constitution treaties are declared to be laws of the land. They are therefore to be regarded and enforced by the State judiciary as equivalent to acts of the Legislature, without the aid of legislative enactments. *Foster* v. *Neilson*, 2 Peters, 253, *per* Chief Justice Marshall. If the Federal Constitution, or a treaty, inhibits the doing of a certain thing, no legislative or executive action is required to authorize the courts to decline to override these limitations or restrictions, "for the palpable and all-sufficient reason, that to do so would be not only to violate the public faith but to transgress the supreme law of the land."

In view of these principles of law, we hold then that it

is the duty of the courts of the State to take cognizance of, construe, and give effect to the treaties of the Federal government made with other nations; and that under a proper construction of the treaty with Mexico, the defendant could not be legally called upon to answer any other crime save that for which he was extradited. *Com.* v. *Hawes,* Law of Extradition (Spear), 138; Burley's case (Spear), 161; *Ham* v. *State,* 4 Texas Ct. App. 645.

It is urged in the very able brief of the assistant attorney general that this plea to the jurisdiction is not known to our Code of Criminal Procedure, and that therefore the court below could not entertain it, and acted properly in striking it out. The plea to the jurisdiction, in our opinion, is inherent, and a defendant cannot be deprived of the right to interpose it. There are but four pleas which can be interposed by the defendant, under the Code Crim. Proc., to wit: pleas of guilty, not guilty, former conviction and former acquittal. But under the Bill of Rights "no person for the same offense shall be twice put in jeopardy of life or limb." Suppose a defendant desired to plead former jeopardy, where in the Code of Criminal Procedure is this plea provided for? By this sacred Bill of Rights he is protected and shielded against being twice placed in jeopardy, but when he proposes to assert and shield himself with this weapon of defense, he is met with a silent Code, thus rendering inoperative and nugatory this inestimable right. Against this we protest, for we have seen that when the Constitution or treaties prohibit the doing of a certain thing, to authorize the courts to refuse to do the inhibited act it is not necessary to have a legislative enactment. With equal force does this principle apply to the inhibitions contained in the Bill of Rights.

It is apparent from the reasons above stated that the court below erred in striking out the defendant's plea. The judgment is reversed and the cause remanded.

*Reversed and remanded.*