The State v. Hall.

---

THE STATE OF KANSAS v. J. S. HALL.

FUGITIVE FROM JUSTICE—*Extradition*—*Prosecution.* An alleged fugitive from justice, extradited from one state to another, can be prosecuted in the state to which he has been extradited, only for the offense for which he was extradited, until after he has had a reasonable time and opportunity afforded him to return to the place from which he was extradited.

*Error from Saline District Court.*

AT the December term, 1887, of the district court of Saline county, the grand jury found and returned an indictment, consisting of two counts, against J. S. Hall. In the first count he was charged, in connection with one Hannah E. Weller, with forging and counterfeiting a warranty deed, on or about September 1, 1886, at Saline county, under § 114, subdivision 1 of the crimes act. The second count charged Hall alone with the offense. On this indictment a warrant was issued; and Hall having removed to California, a requisition was obtained from the governor of this state on the governor of California, and by his authority extradited to Kansas. He was arrested at Pasadena, Los Angeles county, California, and was returned to this state on the 26th day of January, 1888. On his arrival at Salina he gave a bond with the required security for his appearance at the trial that was to be had at the March term, 1888. At the March term the grand jury found and returned another indictment against Hall alone, consisting of two counts. The first count charges him with the same offense for which he was extradited, and the second

count charges him with passing, uttering and publishing the warranty deed that he was charged with forging.

While the first indictment, and the one upon which he was extradited, was still pending and undisposed of, and while he was in attendance at the court to answer the same, he was arrested on the second indictment, and a *nolle prosequi* was then entered as to the first indictment. Hall then filed a motion to quash the second indictment, and each and every count thereof, for the reason that at the time of his arrest on the warrant issued on the second indictment, the first indictment was pending against him in the court, and was wholly undisposed of; that thereafter, and without the consent of Hall, the first indictment was nollied and dismissed, and Hall discharged; and that said second indictment does not charge the same offense charged in the first one, nor was Hall extradited to this state from the state of California to answer the charges set forth in the second indictment. On the hearing the court sustained said motion as to the second count of the last indictment, to which ruling the state excepted. Hall then waived arraignment, pleaded not guilty, went to trial on the first count, and was acquitted by the jury.

The state reserved the question as to the ruling of the trial court sustaining the motion to quash the second count of the last indictment, and now brings the case to this court for review.

*Joseph Moore*, county attorney, for The State; *W. P. Quinby*, of counsel.

*J. G. Mohler*, and *Lovitt & Sturman*, contra.

The opinion of the court was delivered by

VALENTINE, J.: The judgment of the court below must be affirmed. The question presented is this: Where a fugitive from justice from the state of Kansas to another state has lawfully been extradited from such other state back to Kansas for the purpose that he may be required to answer to a criminal charge contained in a certain indictment, can he at once

be put upon trial to answer to another and different criminal charge, contained in another and different indictment, but a charge of an offense for which he could have been, but was not extradited? In other words, can a person be extradited for one offense and immediately tried for a wholly different offense? We would think not. It is a general maxim of law that judicial process shall not be abused. But to try a person for an offense other than the one for which he was extradited would be an abuse of judicial process. Within this broad and general maxim above referred to, is included the following more definite rule of law, to wit: Where the presence of a person has been changed from a place outside of the territorial jurisdiction of a court of justice to a place within such jurisdiction, and this change has been procured through the instrumentality of another person and upon a pretext of thereby accomplishing some particular purpose, such first-mentioned person cannot, after his presence has been thus obtained within the territorial jurisdiction of the court, and before he has had an opportunity to return, be prosecuted in such court by the person who has thus been instrumental in procuring his presence, for the purpose of accomplishing some wholly different purpose. This rule of law has often been applied by the courts in civil cases. ( *Van Horn v. Great Western Mfg. Co.*, 37 Kas. 523, 526, and cases there cited; Spear on Extradition, 526, and cases there cited; *Compton v. Wilder*, 40 Ohio St. 130.) This rule of law is applied in cases of separate jurisdictions, whether the separate jurisdictions are cities, counties, districts, states, or foreign countries. It is often the case, however, that the jurisdiction of a court extends to every portion of the state; but a court cannot have jurisdiction beyond the boundaries of its own state. Nor can it send its process into other states or countries. It cannot compel a fugitive from justice or any other person beyond the boundaries of its own state to attend its sessions. A fugitive from justice can be obtained from another state or country only with the consent of the executive authorities of such other state or country; and for a state to procure a fugitive

from justice from some other state or country to be *Fugitive from justice; extradition; trial for another offense; abuse of judicial process.* tried for some particular offense, by the consent of such other state or country, and then to try him for another and a different offense before he has had an opportunity to return, would be such an unwarranted abuse of judicial process, such a fraud upon justice, such an act of perfidy, that no court in any country should for a moment tolerate the same.

The foregoing rule of law applies in criminal cases where the fugitive from justice has been extradited from a foreign country. (*United States v. Rauscher*, 119 U. S. 407; same case, 7 Sup. Ct. Rep. 234; *United States v. Watts*, 8 Sawyer, 370; *Ex parte Hibbs*, 26 Fed. Rep. 421, 431; *Ex parte Coy*, 32 id. 911, and note; *Commonwealth v. Hawes*, 13 Bush, 697;· *The State v. Vanderpool*, 39 Ohio St. 273; same case, 48 Am. Rep. 431; *Blandford v. The State*, 10 Tex. Ct. App. 627.) In the cases above cited the fugitives from justice were extradited under treaties, but in these treaties there was no provision that the fugitive from justice should be tried only for the offense for which he was extradited; hence the foregoing decisions are perfectly applicable to this case. The foregoing rule of law also applies in criminal cases between states. (*The State v. Simmons*, 39 Kas. 262; *In re Cannon*, 47 Mich. 481.) And it applies as strongly between states as it does between foreign countries. In *Lagrave's Case*, 14 Abb. Pr. (N. S.) 344, 346, Judge Daniels uses the following language:

"In principle there can be no practical difference between the case of a fugitive brought from a neighboring state under the constitution and laws of the United States, and one brought from a foreign country under the provisions of its treaties. In each the right of freedom to return is precisely the same, and the implied guarantee of that right under the laws is no greater in one case than it is in the other."

The foregoing rule of law stated broadly, as it is, is upheld and sustained by the great preponderance of authority in this country. When applied to civil cases, it is sustained by nearly the entire, if not the universal, current of authority. When

applied to criminal cases where the extradition is from a foreign country, it is sustained by almost all authority. When applied, however, to criminal cases where the extradition is from a sister state, a majority of the cases is against the rule, and as we think, without any good reason. The state should not be allowed to obtain jurisdiction of a fugitive from justice for one purpose, and then to take advantage of that jurisdiction thus obtained and use it for another and a different purpose. A state has no more right to act fraudulently or unfairly than an individual person has, and what the state does by its officers or agents it does itself. Mr. Samuel T. Spear, author of the work on the Law of Extradition, and also Judge Cooley, have carefully considered this entire question, and have come to the same conclusion that we have. (See Spear on the Law of Extradition, ch. 12.) Among the things which Mr. Spear has said upon this subject, we would quote the following:

"No sufficient reason can be assigned why these principles of law should not be applied in extradition cases, so as to guard the process against abuse or diversion from the purpose intended by the constitution. The use of the process for any other purpose is an abuse. On this point Judge Cooley uses the following strong and emphatic language:

"'To obtain the surrender of a man on one charge and then put him upon trial on another, is a gross abuse of the constitutional compact. We believe it to be a violation also of legal principles. It is a general rule, that where by compulsion of law a man is brought within the jurisdiction for one purpose, his presence shall not be taken advantage of to subject him to legal demands or legal restraints for another purpose. The legal privileges from arrest when one is in the performance of a legal duty away from his home rest upon this rule, and they are merely the expressions of reasonable exemption from unfair advantages. The reason of the rule applies to these cases; and it should be held, as it recently has been in Kentucky, that the fugitive surrendered on one charge is exempt from prosecution on any other. He is within the state by compulsion of law upon a single accusation. He has a right to have that disposed of, and then to depart in peace.' (Princeton Review, January, 1879, p. 176.)

"Courts, as will appear in the sequel, have not always adopted this view; and yet it is the only just and proper view in the premises, and the only view that is consistent with the letter and intent of the constitutional provision relating to extradition." (Spear on Extradition, pp. 527, 528.)

"Now to use the constitution and the law for the purpose of forcibly removing a person on the charge of a specific crime from one state to another in order that he may in the latter state be tried for that crime, and then to use the custody thus secured for a different purpose, is to make a case different from the one contained in the constitution and the law, different from the one that appeared in the extradition proceedings, different from the avowed purpose of the demanding state at the time of making the demand, and different from the case that was before the delivering state and on which it passed judgment as to the obligation of delivery. The state that takes this course after obtaining possession of the fugitive, gives the lie to its own official declaration; and if at the time of seeking the possession it meant to do so, then it meant to perpetrate a fraud upon the surrendering state.

"Such a course would plainly carry the jurisdiction exercised over the surrendered party beyond the point and beyond the purpose contemplated in the constitution and the law. That purpose, as expressly stated, is that the party demanded and charged with a specific crime by one state, and arrested and delivered up by another state, may 'be removed to the state having jurisdiction of the crime' charged, and that he may be there put on trial for that crime. It is no part of this purpose that the party being delivered up in the manner specified should, at the pleasure of the state receiving him, be held and tried for other crimes, or that he should be arrested and held to bail in civil actions by creditors, whether these creditors procured his extradition or not. Either proceeding would be foreign to and in excess of the one purpose for which, under the constitution and the law, the demand was made by one state, and the arrest and delivery were ordered by the executive authority of another state.

"The constitution furnishes the extradition remedy for the case which it describes, and for no other case; and the arrest of the extradited party in a civil action, or his trial for an offense different from the one specified in the proceedings, is a use of the custody thus secured that is not in that case. It must be put there, if at all, by judicial construction; and such construction we are compelled to regard as an abuse of the remedy.

"It is due to good faith between the states, to the sovereignty of the states as distinct political communities, to the terms of their intercourse with each other in demanding and surrendering fugitives from justice, and to the plain intent of the con-

stitution in providing the extradition remedy, that when one state in this way obtains the custody of a person it should limit the use of that custody to the purpose for which it was obtained, and which was distinctly avowed by it when obtaining the same; and hence, when this purpose has been gained, the state demanding and receiving the fugitive should interpose no legal hindrance to his freedom of departure and return to the state from which he was thus removed. The matter for which he was brought into the state having been legally disposed of, then, in the language of Judge Cooley, he has a right 'to depart in peace.' Any other course, if originally intended, would be a fraud on the part of the demanding state, and, if not so intended, would be an act of bad faith.

"Extradition is not an act between the extradited party and the person or persons who may have procured the extradition, but between two sovereign states for the purpose of public justice in the case specified. These states are bound to act in good faith toward each other, no matter what may have been the motives of private parties in seeking the extradition. One of these states sets forth in its case, and if the other responds affirmatively by compliance with its demands, as it will be bound to do if the case comes within the provisions of the constitution and the law, then the former state will be equally bound in honor to confine the exercise of its jurisdiction to the case presented." (Spear on Extradition, 548–550.)

"The constitution and the law make it the duty of the asylum state to give the necessary consent and put forth the necessary action when, and only when, the prescribed conditions are present; and one of these conditions is a specific and definite charge of a particular crime, as the ground of the removal, and also a declaration of the purpose for which the removal is sought.

"The obvious implication, arising from this condition, is that the state receiving the fugitive under the constitution and the law, like a nation receiving a fugitive under a treaty, should use the custody only for the purpose professed when acquiring .it, and which was had in view by the delivering authority when making the arrest and surrender. This implication naturally arises from the constitution and the law; and if so, then it is binding on state courts as it would be if it had been stated in express words. What the constitution or the law, by a just and fair construction implies, is a part of that constitution or that law." (Spear on Extradition, 552.)

The provision of the United States constitution upon which interstate extradition is founded, reads as follows:

"A person charged in any state with treason, felony, or other crime, who shall flee from justice and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime." (U. S. Const., art. 4, § 2.)

This provision does not expressly say that the extradited fugitive shall not be prosecuted in the state to which he was extradited for any offense other than the one for which he was extradited; nor does it say that he shall not be subject to other prosecutions of a civil character. But neither do treaties between the United States and foreign nations, so far as they have been construed, say any such thing, but the strong implications of both the constitutional provision and the treaties, are to that effect, at least so long as the extradited fugitive is involuntarily kept within the state to which he has been extradited; and the state to which he has been extradited cannot fairly and honorably permit him to be subject to any such prosecutions. As between sister states, or as between a state and a foreign country, whatever the state permits to be done by or through its officers, agents or courts of justice, it does itself and is responsible therefor. As between sister states, there is more reason for applying the doctrine that an extradited fugitive can be prosecuted only for the offense for which he was extradited than there is between a state and a foreign country, for the reason that the state from which the fugitive was extradited has no effective remedy, while a foreign country can protect itself by having a provision inserted in its treaties with our country preventing the extradited fugitive from being prosecuted for anything except the offense for which he was extradited, or by withdrawing all intercourse between it and our country. On the other hand, sister states cannot make treaties, nor can they avoid intercourse. It is the constitutional duty of a sister state in every case to extradite a fugitive from justice upon a legal requisition from another

sister state; and it cannot ask any questions upon the subject, nor impose any terms.

The judgment of the court below will be affirmed.

All the Justices concurring.