THE STATE v. PATTERSON, *Appellant.*

In Banc, June 6, 1893.

1. **Criminal Practice:** SEVERAL COUNTS, CONVICTION ON ONE OF. A conviction on one of several counts in an indictment amounts to an acquittal as to the others.

2. ———: ———: FORMER JEOPARDY. Where a defendant is placed on trial on the second count in an indictment and thus placed in jeopardy, a dismissal by the prosecuting attorney as to such count operates as an acquittal of the charge contained in it.

3. **Presumption.** Every one is presumed to intend the natural and probable consequences of his own acts.

4. **Criminal Law:** SELLING FORGED CHECK: EVIDENCE. The evidence in this case reviewed, and *held,* sufficient to support a conviction of selling a forged check with the intent to have the same passed.

5. **Fugitive from Justice:** EXTRADITION. A fugitive from one of the states of the union, when extradited from another state, can be tried for offenses other than the one for which he was extradited.

*Appeal from Saline Criminal Court.*—HON. J. E. RYLAND, Judge.

AFFIRMED.

*Samuel Boyd* for appellant.

(1) The indictment in this case contains three counts, charging distinct offences, and is a valid and sufficient indictment. The verdict finds defendant "guilty" as charged in the third count, and amounts to an acquittal of the charge contained in the first count. Wharton's Criminal Practice and Pleading, sec. 895; *State v. Kattleman,* 35 Mo. 107; *State v. Whitton,* 68 Mo. 91; *State v. Cofer,* 68 Mo. 120; *State v. Grimes,* 29 Mo. App. 470; *State v. Hays,* 78 Mo. 600. (2) The dismissal by the state, as to the second count, after the jury had been sworn, and after the state's evidence had been heard, amounted to an acquittal of the defendant upon the second count of the indictment. Wharton's Criminal Practice and Pleading, secs. 383, 347; *People v. Gardner,* 62 Mich. 307; s. c. 29 N. W. Rep. 19; *People v. Curtis,* 76 Cal. 57; s. c. 17 Pac. R. 941. (3) The evidence in this case, while admissable, is insufficient to sustain a conviction upon the third count of the indictment. (The count upon which the verdict is based.) The offence charged in said count is one described in section 3634 of the Revised Statutes

of 1889. The intent necessary to constitute the offence is the "intent to have the same altered or passed." To sustain the charge of the third count, it is necessary to charge and prove that intent. 3 American and English Encyclopedia of Law, p. 674, and cases cited; Bishop's Criminal Law [6 Ed.], secs. 288, 735; *State v. McCullum*, 44 Mo. 345; *Reagan v. State*, 28 Tex. 227. (4) Instruction number two, given for the state, should not have been given, for the reason that there was no evidence to support it—no evidence of the particular intent necessary to constitute the crime charged. *Vanvalcanberg v. State*, 11 Ohio 404; *Hutchins v. State*, 13 Ohio 198; *State v. Watson*, 65 Mo. 120. (5) The trial court did not have jurisdiction to try defendant for the crime of which he was convicted. The affidavit on which he was extradited charged but one offense, viz: that of making a forged check, and does not charge that defendant passed the forged check to another person. (6) The affidavit is not sufficient under the laws of this state to charge the crime of selling a forged check. Revised Statutes, section 4021; *Coyle v. Railroad*, 27 Mo. App. 584; *Scott v. Robards*, 67 Mo. 289; *Pier v. Heinrichoffen*, 52 Mo. 333. (7) The weight of authority in this country is to the effect that a person extradited from one state to another can only be held to answer the charge for which he has been requested to be delivered up, and for which he has been delivered. *State v. Hall*, 40 Kan. 308; 7 American and English Encyclopedia of Law, pages 648, 649, 650 and notes and cases cited particularly, *In re Cannon*, 47 Mich. 481; *United States v. Rausher*, 119 U. S. 407; *Com. v. Hawes*, 13 Bush 697; Spear on Extradition, pages 525 to 557; *In re Fitton*, 45 Fed. Rep. 471; *Ex parte Spears*, 88 Cal. 640; Act of Congress concerning fugitives from justice, Revised Statutes, volume 2, page 2072.

*John M. Wood*, Attorney General, for the state.

(1) The third count of the indictment upon which defendant was convicted sets out the instrument according to its tenor, and charges the offense in the language of the statute, and is sufficient. Revised Statutes, section 3634. (2) There was nothing in the special plea of defendant. The several counts all related to but one transaction—the one, as the evidence which was introduced on the special plea showed, for which he was extradited. (3) It was competent to show defendant's acts and declarations to the people in Marshall as forming a part of his scheme to deceive and defraud. As admitted by defendant himself, they were resorted to for the purpose of taking advantage of the people, owing to their excitement on the railroad question, by placing himself in their confidence so as to secure payment of the forged check. (4) It was competent to prove the incorporation of the bank by general reputation, as was done. Revised Statutes, section 4215; *State v. Jackson*, 90 Mo. 156; *State v. Tucker*, 84 Mo. 23; *State v. Fitzsimmons*, 30 Mo. 236. (5) Taking the closing argument in its fullness, we cannot see that anything was said which justifies a reversal of the case. As can be clearly seen, the prosecuting attorney took the position that there was no reasonable doubt in the case, and was insisting upon and urging the jury to not allow him to escape on that as a pretext. (6) The defendant was proven guilty by evidence most satisfactory, and the judgment should be affirmed.

*T. H. Harvey*, Prosecuting Attorney, and *A. F. Rector*, also for the state.

(1) The evidence in this case was both admissible and sufficient to sustain a conviction under the third

count of the indictment.   The act of selling for value the check known to the defendant to be a forged and worthless check is sufficient proof of the intent to have the same passed.   Wharton's Criminal Law [9 Ed.], section 717; *Hopkins v. State*, 3 Metcalf (Mass.) 460. (2) Instruction No. 2 was properly given for the state. There was abundant evidence to support it.   (3)   The court had jurisdiction to try the defendant under the third count of the indictment.   The affidavit of J. P. Huston fully charged the offense of which defendant was convicted; charged not only the forgery, but the sale and exchange of the forged check.   The preponderance and weight of authority are to the effect that defendant can be tried not only for the offense for which he has been delivered up, but for another and a different offense.   *Haw v. State*, 4 Texas App. 645; *Browning v. Abrams*, 51 How. Pr. 172; *State v. Stewart*, 60 Wis. 587; 50 Am. Rep. 388; *Hackney v. Welsh*, 107 Ind. 253; *Waterman v. State*, 116 Ind. 51; *Harland v. Territory*, 3 Wash. 131; *In re Miles*, 52 Vt. 609; *Williams v. Bacon*, 10 Wend. 636; *Dow's Case*, 18 Pa. St. 37; *In re Noyes*, 17 Alb. L. J. 407; Spear on Extradition, note at page 555; Act of Congress concerning fugitives from justice, Revised Statutes of Missouri, page 2072.   2 Moore on Extradition, secs. 642–648. The case of the *United States v. Rauscher*, 119 U. S. 407; and *Commonwealth v. Hawes*, 13 Bush, 697, cited by counsel for defense, are not in point, for the reason that they both deal directly and solely with international and not interstate extradition.

SHERWOOD, J.—There were three counts in the indictment on which the defendant was put upon his trial.   All of the counts were properly drawn.   The third count is the following:   "And the grand jurors aforesaid, upon their oaths aforesaid, do further

present and charge that said Don Cameron Patterson, alias A. R. Ruger, on the twentieth day of December, 1890, at the said county of Saline, unlawfully and feloniously did sell, exchange and deliver to the Wood & Huston Bank, a bank then and there duly incorporated under the laws of the state of Missouri, for the consideration of $125, a certain falsely made, forged and counterfeited check, purporting to be made and drawn by one A. B. McIntire, in favor of A. R. Ruger, on the Joplin National Bank, a bank then and there duly incorporated under the laws of the United States, which of said falsely made, forged and counterfeited check is the tenor following, that is to say:

" 'JOPLIN, Mo., December 17, 1890, No. ——
" '*Joplin National Bank.*
" 'Pay to A. R. Ruger, —— or bearer $125.00-100; one hundred and twenty-five —— dollars.
" 'a-c M. C. T. Co.            A. B. MCINTIRE.'

"Knowing said check to have been falsely made, forged and counterfeited with felonious intent then and there to have the same passed, against the peace and dignity of the state.

"THOMAS H. HARVEY,

*Prosecuting Attorney.*" •

This count is based on section 3634, Revised Statutes, 1889, which declares that: "Every person who shall sell, exchange or deliver, or offer to sell, exchange or deliver, or receive upon a sale, exchange or delivery for any consideration, any falsely made, altered, forged or counterfeit note, check, bill, draft or other instrument, the falsely making, altering, forging, or counterfeiting of which is by the last section declared to be an offense, knowing the same to be falsely made, altered, forged or counterfeited, with intent to have the same altered or passed, shall be adjudged guilty of forgery in the second degree."

I. As the defendant was tried and convicted on this count, it is unnecessary to notice the other counts further than to say that the jury, having found the defendant guilty as charged in the third count, that this amounted to an acquittal of the charge in the first count. *State v. Whitton*, 68 Mo. 91; *State v. Hays*, 78 Mo. 600. And that as the defendant was put on his trial on the second count, and thus placed in jeopardy, the dismissal by the prosecuting officer as to such count operated an aquittal of that count. Wharton's Criminal Practice and Pleading, sec. 383 and *cases cited*.

II. The defendant brings in question the sufficiency of the evidence to support his conviction under the third count. That evidence in substance shows: That defendant came to Marshall, Saline county, Missouri, December 19, 1890, representing himself to be A. R. Ruger, the chief engineer of the Chicago, Milwaukee & St. Paul Railroad, and that he desired to establish his headquarters there; drove around town that day with some of the citizens over the route of the proposed road, and spoke of hiring teams, etc.; that next morning he hired a team to take him to Miami, but before leaving saw J. P. Huston, cashier of the Wood & Huston bank, to whom it seems he had been introduced, and telling him that he wished to leave town, but wanted to have a check cashed before starting, and on Huston asking him the amount of the check and whom it was on, said $125, and on A. B. McIntire, showing Huston the check, and on the latter asking him who McIntire was, stated he was a wealthy tie contractor for whom he had been doing some work, and this check was in payment therefor.

Thereupon Huston cashed the check, which was already endorsed "A. R. Ruger," which defendant acknowledged to be his signature, and the defendant,

getting into the buggy already engaged, started northward. He was next seen in Washington, D. C., whither he was pursued, but escaped to Montana, where he was finally captured and brought back to Saline county, on requisition. On his way back to Marshall, he was asked by one of his captors, M. H. Alexander, how he came to work such a scheme on the Marshall people, and he said he thought they were ripe for that kind of a thing; the railroad interest was pretty warm there, and he had heard of it; had read of it in the paper, and he thought he would come up here and represent himself as being this engineer, and propose to run the line; said he had run out of money and thought that would be a good way to get some; he said that he had written this check that he passed on Huston, himself; he asked him what made him make it to A. R. Ruger, and he said that was the first name that he thought of.

Other evidence also shows that the check was false and forged, and that there was no such person as A. B. McIntire. Evidence on behalf of the defendant, testifying in his own behalf, shows that the check had been filled in and endorsed, and was in his possession at Kansas City, before he went to Marshall. He did not deny any of the other statements of the state's witnesses, so that they virtually stand unchallenged on the record. *State v. Musick*, 101 Mo. 260. And it is this undisputed testimony which the defendant's counsel denies is sufficient to establish the guilty intent of defendant to have the check passed.

From that evidence, no reasonable doubt can be entertained that defendant knew that the check was false and forged, and that he sold the same to the Wood & Huston bank "with intent to have the same passed." The words just quoted seem to be peculiar to the statutes of this state, not having been found in those of any other state; but the same character of

evidence which would be sufficient in other cases of forgery to show a guilty intent, would, if applicable to the facts of the present one, show such guilty intent as the statute requires.

Intent being an operation of the mind, cannot be discovered or revealed in the great majority of cases except by acts, and from acts alone, unaccompanied by a single word, guilty intent is infused into the prosecution of crimes of the highest grade. Everyone is presumed to intend the natural and probable consequences of his own act, and the natural and probable consequences of the act of defendant were that the bank to which he sold the forged check would pass the same in regular course of exchange to the bank on which it was drawn, in order to be reimbursed for the amount which its cashier paid to defendant. 1 Bishop on Criminal Law [7 Ed.], sec. 735; *State v. Musick*, 101 Mo. 260; Wharton on Criminal Evidence [9 Ed.], sec. 734; *Babcock v. Eckler*, 24 N. Y. 623; *Snyder v. Free*, 114 Mo. 360.

The principal element in forgery consists in the fraudulent purpose, and evidence of all circumstances which bear on the question of fraud, are pertinent; and that proofs of fraud may be of substantially the same character in criminal as in civil cases. 8 American and English Encyclopedia of Law, 528, 529, and cases cited.

It is contended, however, on behalf of defendant, that there is no evidence of any *"particular intent"* to have the check passed. How this could have been done in a more satisfactory way than was done in this case it is difficult to conceive. If the contention of defendant's counsel be correct, nothing short of defendant's own confession would suffice.

If the act done is *in itself indifferent*, and it becomes criminal only because done with a fraudulent intent,

VOL. 116—33

then the intent must be established; but where, as in the present instance, the act of selling the check was *in itself unlawful*, the proof of excuse or justification lies not on the state, but on the defendant, and if he fail to excuse òr justify himself, the law implies a criminal intent. 3 Greenleaf Evidence [14 Ed.], sec. 13 and cases cited.

As the only probable outcome of defendant's unlawful act was that the check would be passed; would be presented to the Joplin Bank for payment, we must accept as correct the verdict of the jury, that such was defendant's intention when he sold the check. This being the case, it is wholly immaterial that the state dismissed as to the second count after trial begun, which count was grounded on section 3646 and charged that defendant did "pass and utter as true" the check in question. Defendant could possibly have been found guilty under that section, but the state having dismissed as to the second count, the resulting acquittal under that count did not affect the prosecution and conviction of defendant under section 3634. There was, therefore, no error in giving the second instruction, which authorized a conviction under the third count upon proof being made of the necessary facts to support the charge it contained.

3. The third question presented by the record is that in relation to the jurisdiction of the court to try defendant on the third count of the indictment; and this contention is made because it is said the affidavit of Huston, on which the requisition was based, was not sufficiently comprehensive to embrace the charge contained in that count, and this contention was set forth in the trial court by a plea to the jurisdiction. The decided cases show some divergence of opinion on the question whether a fugitive from justice, when brought back to the state where the alleged crime occurred, can

be tried for crimes other than the one for which he was extradited, some authorities holding that the fugitive cannot be tried except for the offense named in the warrant of extradition, others that when a person is properly charged with crime in the courts of the state to which he is brought, they will not inquire into the means whereby his extradition was affected.   8 American and English Encyclopædia of Law, pp. 648 *et seq.* As sustaining the latter view, a view entertained by the great preponderance and a majority of the authorities, are:    *Ham v. State,* 4 Tex. App. 645;   *State v. Ross,* 21 Iowa 467;    *State ex rel v. Stewart,* 60 Wis. 587; *Waterman v. State,* 116 Ind. 51; *People v. Rowe,* 4 Park. Cr. 253;   *Ker v. People,* 110 Ill. 627;   *Lagrave's Case,* 59 N. Y. 110; *People ex rel v. Cross,* 135 N. Y. 536; *In re Miles,* 52 Vt. 609; *State v. Smith,* 1 Bail. (So. Ca.) 283; *Dows' case,* 18 Pa. St. 37; *Harland v. Territory,* 3 Strune (Wash.) 131;   *Commonwealth v. Wright,* 158 Mass. 149; *Kentucky v. Dennison,* 24 How. (U. S.) 66; *In re Noyes,* 17 Alb. L. J. 407; *Ker v. Illinois,* 119 U. S. 436; *Mahon v. Justice,* 127 U. S. 700; *Cook v. Hart,* 146 U. S. 183; 1 Bishop Criminal Procedure [3 Ed.], sec. 224 *b.*; 2 Moore on Extradition, sec. 643 *et seq.*

In the recent case of *Lascelles v. State,* 16 S. E. Rep. 945 (1892), the supreme court of the state of Georgia, per LUMPKIN, J., ruled that the defendant, though indicted for the offense of being a common cheat and swindler, and for larceny after trust, and extradited from the state of New York on those charges, could be indicted and tried for a forgery committed in that state prior to his extradition.   This case was brought on error to the supreme court of the United Seates, *Lascelles v. Georgia,* 23 Sup. Ct. Rep. 687, where, after a review of the authorities, the judgment was affirmed.   In that case, decided April 13, 1893, the supreme court of the United States, as did the

supreme court of Georgia, clearly pointed out the distinction which should be taken between those cases of extradition arising between the several states of the Union under the constitution and laws of congress and those cases where a prisoner has been extradited from a foreign country under treaty stipulations, in which latter cases it has been ruled that a person thus extradited could only be tried for the specific offense which caused his extradition. *United States v. Rauscher*, 119 U. S. 407.

In *Ker v. People*, 110, Ill. 627, the defendant was kidnapped in Peru, and brought over to the state of California, where he was extradited on a requisition from the state of Illinois, on a charge of larceny, and returned to the state of Illinois whence he had fled, and there tried on a charge of embezzlement, and it was held that defendant had no valid ground of objection to the jurisdiction of the court which tried him. Carried on error to the supreme court of the United States, the judgment was affirmed. 119 U. S. 436.

In *Mahon v. Justice*, 127 U. S. 700, the defendant was kidnapped in West Virginia and forcibly carried back to Kentucky and held for trial of a crime alleged to have been committed in that state. The governor of West Virginia demanded that defendant be restored, and meeting with refusal, resorted to *habeas corpus* in order to effect his restoration. The circuit court of the United States refused to discharge the defendant, and on appeal to the supreme court this judgment was affirmed. In that case it was contended that a right of asylum in the state to which he had fled, was possessed by the fugitive, which the federal courts should enforce; but this right was declared in that case to have no existence under the *laws* of the United States, nor did they make any provision for the return of parties who without lawful authority had been abducted.

from another state; and that such forcible abduction from another state did not affect or impair the jurisdiction of the state to which they were brought, to try them for crimes committed therein.

That the jurisdiction of the court in which the indictment is found is not impaired by the method used to bring the accused before it, was the rule at common law and was declared in the early case of *Ex parte Scott*, 9 B. & C. 446. The result of the authorities heretofore cited is in the same direction.

There are a few others opposed to this view; among them are *State v. Hall*, 40 Kan. 338; *Ex parte McKnight*, (Ohio) 28 N. E. Rep. 1034; *Cannon's case*, 47 Mich. 481; but we are quite satisfied both upon reason and authority that the rule announced in the former cases is the correct one and should prevail.

Therefore judgment affirmed. All concur.