## Ex parte KER.

(*Circuit Court, N. D. Illinois.* October 8, 1883.)

1. EXTRADITION TREATY BETWEEN UNITED STATES AND PERU—CRIMINAL BROUGHT WITHIN JURISDICTION OF COURT—ARREST—HABEAS CORPUS.

   By a treaty of extradition between the United States and Peru, the latter agreed to deliver up to justice persons who, being accused or convicted of the crime of larceny or forgery, committed within the territory of the United States, sought an asylum or should be found within the territory of Peru, in the manner and upon the terms therein stated. A person being accused of having committed those crimes in Illinois, fled to Peru, and was there found. Certain measures were taken by the executive of Illinois and of the United States to cause him to be delivered up in accordance with the treaty. The necessary order was given to that effect by the president of the United States, but owing to some cause the terms of the treaty were not complied with, and he was seized in Peru by private persons, without his consent, and without the authority of the Peruvian government, put on board a ship, transported to San Francisco, and from there to the place where it was alleged the crimes were committed. A court having jurisdiction of the offenses had found indictments against the person thus accused, had issued process to cause his arrest, and the proper officer having these writs, when the offender came within the jurisdiction of the court, arrested him by virtue thereof. On a writ of *habeas corpus,* asking for his release, for the reason that he was thus unwarrantably seized in Peru and brought to the place where the offenses were committed, *held,* the writ should not be issued, because, if issued and served, the accused could not be discharged from custody.

2. SAME—REMEDY—ILLEGAL ARREST—ACTION FOR DAMAGES.

   For the wrong or injury done to him, not under the authority of any government, state or national, or of Peru, he had a remedy against the wrong-doers before any competent court, which, if he were entitled thereto, would award him damages for the injury. Being within the jurisdiction of a court competent to try him for the offenses charged against him, and taken under its process, although brought there without authority of law by private persons, his arrest could not be considered unlawful. If protected by the extradition treaty between the United States and Peru, he can set it up in the criminal cases referred to, or he can apply to the supreme court of the United States, and in either way thus obtain the opinion of that court upon his right to immunity under the treaty.

On Petition for Writ of *Habeas Corpus.*

*Robert Hervey* and *C. J. Beattie,* for petitioners, claimed that the petitioner, under the circumstances, was not taken by *due* process of law; that the treaty between the United States and Peru was the supreme law of the land, and that the petitioner could not be taken from Peru in any other mode than under the treaty, and consequently that the criminal court of Cook county never acquired jurisdiction of his person; that the act of congress of 1867 expressly protected the petitioner by its terms, being captured in violation of a treaty; and in support thereof cited the following authorities: Spear, Extrad. various references throughout the entire work; Cooley, Const. Lim. p. 16, notes 1, 1*b,* p. 22, note 1; *People* v. *Curtis,* 50 N. Y. 321; *People* v. *Brady,* 56 N. Y. 182; *Re White,* 49 Cal. 434; *Re Cannon,* 47 Mich. 981; [S. C. 11 N. W. Rep. 280;] *Blandford* v. *State,* 10 Tex. Ct. of Appeals, 627; *Com.* v. *Hawes,* 13 Bush, (Ky.) 697; *Jones* v. *Leonard,* 50 Iowa, 106; act of congress, February 2, 1867, giving writ

of *habeas corpus* on application of party-claiming to be illegally restrained of his liberty in violation of a treaty of United States; and see the case of the *State* v. *Vanderpool*, 16 Chi. Leg. News, 34, Sup. Ct. Ohio.

*Leonard Swett* and *P. S. Grosscup*, contra.

(1) When a court of competent jurisdiction to try the crime holds the petitioner in custody for the trial of such crime, it will not avail the petitioner that the means and force by which he was brought into that custody were illegal. The court will inquire only into the legality of the present custody. *Rex* v. *Marks*, 3 East, 157; *Ex parte Krans*, 1 Barn. & C. 258; *Ex parte Scott*, 9 Barn. & C. 446; *State* v. *Smith*, 12 S. C. 430; *State* v. *Brewster*, 7 Vt. 118; *Dow's Case*, 18 Pa. St. 37; *People* v. *Rowe*, 4 Parker, Crim. Cas. 253; *Ex parte Coupland*, 26 Tex. 388; *State* v. *Ross*, 21 Iowa, 467; *U. S.* v. *Caldwell*, 8 Blatchf. 131; *Adriance* v. *Lagrave*, 59 N. Y. 110; *U. S.* v. *Lawrence*, 13 Blatchf. 306; *Ex parte Noyer*, U. S. C. C. for N. J., reported 17 Alb. Law J. 407.

(2) In 13 Bush, (Ky.) the treaty then before the court *prohibited* the trial of a fugitive for any other offense than for that for which he was extradited. Not so in the treaty between the United States and Peru.

(3) The criminal court of Cook county obtained jurisdiction of the person of Ker when he came within the reach of its process. There is no stipulation in the treaty with Peru that jurisdiction shall not attach unless the fugitive has been brought within the reach of its process according to the procedure of extradition.

(4) The treaty does not afford immunity to offenders against the laws of the United States who may be taken from the soil of Peru by any unauthorized persons.

They also cited the decision of Judge McALLISTER in this case of Ker, refusing to discharge him. 16 Chi. Leg. News, 17.

DRUMMOND, J. This is an application on the part of Frederick M. Ker for a writ of *habeas corpus* to issue, to inquire into the cause of his imprisonment, and, if it be found unlawful, that he shall be discharged therefrom. The rule upon the subject is that if on an application of this kind the court is of opinion that the writ, if issued, would not authorize the discharge of the petitioner, it is not necessary to issue it. The law does not require a vain act to be done.

I have come to the conclusion in this case that I will not issue the writ. I will state briefly the reasons why I have reached this conclusion.

The petitioner was charged with the offense of larceny and forgery, committed within the jurisdiction of the court where the two indictments have been found. In considering the question, we may assume, for the purpose of this motion, that these offenses were actually committed. After they were thus committed the petitioner left the country and fled to Peru, in South America. While there he

was under the protection of the laws of Peru, and could not be legally removed therefrom except in accordance with the laws of that country.

The United States had made a treaty in 1870, under which Peru agreed, in the manner therein stated, to return to the United States certain offenders who had fled to that country, and claimed the protection of its laws. It has been said in argument that a person could not be returned who had escaped from justice from the United States, and had taken refuge there in any other way than under the terms of the treaty. That perhaps is true, provided there was no other way under the laws of Peru. I do not know that the fact that a treaty was made between the United States and Peru, by which the latter state agreed to return fugitives from justice to the United States, prevented that country from declaring, under its own laws, that persons might be returned independent of the treaty. All that I wish to insist on is that the petitioner, being in Peru, could only be legally removed by virtue of the law of that country, and, of course, the treaty made between the United States and Peru was a law of that state. Certain steps were taken on the part of the government of the United States, at the request of the executive of this state, to procure the extradition of the petitioner from Peru to Illinois, where the offenses were committed. Accordingly a requisition was made by the executive of the United States, upon the authorities of Peru, for the return of Ker.

Owing to some cause, which is not stated in the petition, the steps pointed out in the treaty were not taken. A demand seems not to have been made upon the authorities of Peru; but the petitioner was seized, it may be conceded, without any authority on the part of the United States, and without any consent on the part of Peru, by private persons; he was placed on board the United States ship Essex, in a port of Peru; transferred to the Sandwich islands, and thence in a private vessel to San Francisco, within the territory of the United States. For the purpose of placing him under the authority of the law of the United States if he came within the state of California, a requisition from the governor of Illinois upon the governor of California was made, and a warrant issued by the governor of that state. It is said, and is uncontroverted, that at the time this process was issued by the governor of California the petitioner was not within the territory, and so was not subject to the process or authority of the executive of that state. However this may be, in the same manner it may be admitted that he was taken in Peru, and under the same authority, no more and no less, he was taken to San Francisco, to Illinois, and to the county of Cook, where the offenses were committed. When brought here, there had been a process issued from a competent court, on indictments found in that court against him for the offenses which it was alleged he had committed, and under that process he has been taken into custody, and now, it is claimed, he

should be released because of the circumstances connected with his arrest and capture in Peru, and his transfer from that country to the United States. It is claimed that this vitiated—what otherwise would be legal—the arrest under the process by which he is now held in custody.

The question is whether this is so in point of law. It is said that while in Peru he was under the protection of the treaty which had been made between the United States and Peru, and that his seizure and transfer were a violation of the treaty stipulations between the United States and Peru. This is only true in a qualified sense. While in Peru he was not, strictly speaking, under the protection of the laws of the United States, but of the laws of Peru; and if he was taken contrary to the provisions of the treaty between the two countries, he may have been taken in violation of the laws of Peru. But in one sense it may be said that he does not come within the protection of the treaty between the United States and Peru. That treaty does not guaranty protection to all citizens of the United States who may be within the territory of Peru. It is the laws of Peru that protect the citizens of the United States who may for the time be domiciled in or inhabiting Peru; so that it can hardly be said, in the ordinary sense of the language used, that he was under the protection of the treaty between Peru and the United States. True, he could not, it may be, be legally transferred from one state to the other except in the mode pointed out by the treaty, unless there was some law of Peru which authorized it to be done. If the act so done was against the laws of Peru, for that violation the party has his remedy under the laws of Peru, (enforceable here or elsewhere,) and not, properly speaking, under the laws of the United States.

The United States by this treaty does not guaranty it will protect every citizen or inhabitant of Peru that may come to the United States. If a Peruvian here has a trespass committed against him, he has his remedy under our laws. So it is in Peru; when the citizen of the United States is there he is under the protection of its laws. While this, I think, is true, still I am willing to admit there is force in the view taken by the counsel of the petitioner in this case. Our judgment and our feelings naturally rebel against an act done in the manner in which this was done, as stated in the petition, namely, by a person without authority of law—without any process —seizing one claimed to have fled from justice and taken refuge in Peru, and bringing him to the United States, thus committing what is claimed to be an outrage upon personal rights and personal liberty; and we naturally desire, in all proper cases, to give protection to the party who has thus been outraged, and, when he asks for it, to give him adequate compensation for the wrong that has been done. The question is, is that this case? The real question is whether, because of this private wrong done in taking possession of the person of

the petitioner to be brought to the state of Illinois, that vitiates and destroys the process that has been issued from a competent court for the offense or offenses charged against him, so as to prevent his arrest? In view of the authorities which have been cited on the argument, I cannot say that the case is so clear as to authorize the court to issue the writ; or, if it were issued and served, to discharge him from custody on this account. The consequences of the discharge are so very serious that the court may well pause before reaching this conclusion, because the result would be that the petitioner might escape from all trial for these offenses. Once left at liberty, of course he necessarily would evade trial, unless he remain here until the protection claimed is withdrawn from him, and if he escapes from it, as he has already attempted, because he was once captured, it does not follow that he will be a second time.

It seems to me that it is not competent for the court to look into the circumstances under which the capture was made, and the transfer of the petitioner from Peru to the United States, in order to free him from the consequences of the lawful processes which have been served upon him for the offense or offenses which he is charged to have actually committed within the county of Cook and state of Illinois.

The only cases which have been cited which seem to have some bearing upon the question involved here, are those which have arisen where parties have been transferred from a foreign country to the United States, and treaties have existed under which the extradition was made from a foreign country to the United States for the commission of a particular offense. Some have held, and such seems to be the opinion of Mr. Spear, who has written a work on the law of extradition, that where a party has been arrested under the authority of a treaty in a foreign country and transferred to this country for the commission of an offense here, he cannot be tried for a different offense. Perhaps it may be said the weight of authority is in accordance with that view. But that case is not this. Here, though certain measures were taken by which to transfer the petitioner from Peru to this country, yet they were never carried into effect,—the final steps, in other words, were not taken; although the writ of authority was issued, it was not executed as required by its terms, and it may be said that the parties took the law into their own hands, throwing aside the writ or process which had been issued, and which was in the hands of one of them, who thus committed violence upon the petitioner's rights. Here, therefore, the petitioner had not been taken under the authority of law, and in pursuance of the terms of a treaty between the United States and a foreign country, from that country to this. He has been taken, I repeat, simply by what we may call physical force, by those having him in custody. The government has not interfered at all. It has been done under the law of the stronger, and not under statute or common law.

So that this case is not within those decisions, while it may be said to be within the authority of other decisions which were cited on the argument. As I have said, if I.were clear in the view that this petitioner should be released, I would issue the writ and discharge him; it is because I am not clear that I decline to issue the writ, the consequence of which would be his discharge; in other words, I am not satisfied that he ought to be discharged from custody.

I am the more inclined to this view because by this decision he does not lose the protection of the treaty. if he is entitled to it, for he can set it up in the indictments which have been found against him, and the process which has been issued from the state court; and he can take the opinion of the supreme court of the United States upon the question, if he is entitled to the immunity he claims under the treaty, after the case has passed through the various courts of the state; or he can, I suppose, go to the supreme court of the United States and apply for a writ of *habeas corpus,* and if he is entitled to it that court can give him the protection of the treaty. So that, in deciding the case in this way, I do not deprive him ultimately of any remedy which he has under the treaty between Peru and the United States; and I may add that, in view of the conflict between some of the state courts and some of the inferior courts of the United States upon this subject, it is very desirable that this question, confessedly of the greatest importance, and now occasionally arising, should be decided by the supreme court of the United States. So that, not being satisfied that the petitioner is now entitled to be discharged from the writs which have been issued against him, I shall not direct the writ of *habeas corpus* to issue, for, if issued and served upon him, I should not, as at present advised, release him from custody.