STATE v. A. G. GLOVER.

*Jurisdiction—Extradited Criminal.*

1. Except in the case of a fugitive surrendered by a foreign government under treaty stipulations, when a person is within the jurisdiction of a Court and there properly charged with crime, the Court may hold him and try him, no matter how he was brought within such jurisdiction.

2. Upon a fugitive's surrender to the State demanding his return in pursuance of national law, he may be tried in the State to which he is returned for any other offense than that specified in the requisition for his rendition, and in so trying him against his objection, no right, privilege or immunity secured to him by the Constitution and laws of the United States is thereby denied.

INDICTMENT for embezzlement, heard before *H. B. Carter, Judge* of the Criminal Court of BUNCOMBE County, at January'Term, 1893.

From a judgment overruling the State's demurrer to a plea to the jurisdiction the Solicitor appealed.

*The Attorney General*, for the State.
*Messrs. Cobb & Merrimon* and *W. W. Jones*, for defendant.

SHEPHERD, C. J.: The defendant was indicted in the Criminal Court of Buncombe County for the embezzlement of certain funds which came into his possession while he was acting as the agent or servant for the Asheville Kaolin

Company.    Upon his arraignment he pleaded, among other things, that the Court had no jurisdiction of his person, and the Court, upon demurrer, sustained the said plea and ordered that the defendant be discharged from custody. From this judgment the State, through its Solicitor, appealed to this Court.

It is a general principle of law, as laid down by the English and adopted by the American Courts, that when one is within the jurisdiction of a Court, and there properly charged with crime, the Court may hold him and proceed to his trial without any reference to the circumstances under which he was brought within such jurisdiction; and so firmly established is this principle that the Supreme Court of the United States has held that it would give no relief even where a person had been kidnapped in a foreign country and brought by force (without reference to any extradition treaty) within the jurisdiction of the State whose laws he had violated.    And it was remarked by the Court that "there are authorities of the highest respectability which hold that such forcible abduction is no sufficient reason why the party should not answer when brought within the jurisdiction of the Court which has the right to try him for such offense, and presents no valid objection to his trial in such Court."    *Ker* v. *Illinois*, 119 U. S., 436; *Mahon* v. *Justice*, 127 U. S., 700; *State* v. *Smith*, 1 Bailes, S. C., 283.

It is insisted, however, by the defendant that the principle above stated does not apply to his case, for the reason that he was surrendered by the State of Pennsylvania to answer a charge of obtaining money from the said Asheville Kaolin Company under false pretenses, and he urges that the charge cannot be varied, and that he cannot be arrested or put upon trial for the embezzlement of the money of the said company, or, indeed, for any other

offense until the particular charge upon which he was extradited has been disposed of and he has had reasonable time and opportunity to return to the State from whence he was taken.

In support of this position we have been able to find but two cases in which the precise question now presented has been decided in this country. These are *State* v. *Hall,* 40 Kansas, 338, and *Ex-parte McKnight* (Ohio), 28 N. E. R., 1034; and an examination of the opinions will disclose that they are founded upon a supposed analogy to the case of *United States* v. *Rauscher,* 119 U. S., 407, in which it is decided that the principle contended for prevails in cases where fugitives from justice have been surrendered by foreign countries under the stipulations of extradition treaties. There are two other cases (*In re Cannon,* 47 Mich., 481; *Complin* v. *Wilder,* 40 Ohio St., 130) in which a similar view was taken, but as they related to arrests in civil actions of persons who had been extradited for criminal offenses, they cannot be considered in point. In response to these it may be said that "a controlling distinction to be noted is that a person against whom it is sought merely to establish or enforce a civil liability has personal rights which are violated by his being brought into the jurisdiction by fraud while an offender against the criminal laws of the State acquires no right by his flight or absence from the jurisdiction which the Courts, in the administration of those laws, are bound to regard when he is again found within the jurisdiction." *Lascelle* v. *State of Georgia,* 16 S. E. R., 949.

In opposition to the foregoing cases there is a very great preponderance of judicial authority. *Ham* v. *State,* 4 Tex. Appeals, 645; *State* v. *Stewart,* 60 Wis., 587; *Post* v. *Cross,* 135 N. Y., 336; *Commissioners* v. *Wright* (Mass.), 33 N. E. R., 82; *In re* Nules, 52 Vt., 609; *In re* Noyes, 17 Albany L. J., 407.

We are relieved, however, of the duty of passing upon the merits of these conflicting views, as the question involves the construction of a provision of the Federal Constitution and the laws made in pursuance thereof, and a recent decision of the Supreme Court of the United States has authoritatively put an end to all controversy upon the subject. The decision referred to is *Lascelle* v. *The State of Georgia, supra*, which was carried by writ of error to the Supreme Court of the United States and decided at its present term. The reasoning of the learned opinion of LUMPKIN, J., of the Supreme Court of Georgia, is approved by the Court, and the distinction between the rights of a fugitive from justice under international and interstate extradition laws is clearly defined. A discussion of the question by this Court would amount to but a repetition of the reasoning contained in the opinions delivered in the above-mentioned case, and it is believed that the following extracts from the opinion of the Supreme Court of the United will be sufficient to indicate the principle upon which the jurisdiction of the Courts of the demanding State in this and similar cases is sustained: "The case of the *United States* v. *Rauscher, supra*, has no application to the question under consideration, because it proceeded upon the ground of a right given impliedly by the terms of a *treaty* between the United States and Great Britain, as well as expressly by the acts of Congress in the case of a fugitive surrendered to the United States by a foreign nation. That treaty, which specified the offenses that were extraditable, and the statutes of the United States, passed to carry it and other like treaties into effect, constituted the supreme law of the land, and was construed to exempt the extradited fugitive from trial for any other offense than that mentioned in the demand for his surrender. There is nothing in the Constitution or statutes of the United States in reference to interstate ren-

dition of fugitives from justice which can be regarded as establishing any compact between the States of the Union, such as the Ashburton treaty contained, limiting their operation to particular or designated offenses. On the contrary, the provisions of the organic and statutory law embrace crimes and offenses of every character and description punishable by the laws of the State where the forbidden acts are committed. It is questionable whether the States could constitutionally enter into any agreement or stipulation with each other for the purpose of defining or limiting the offense for which fugitives would or should be surrendered. But it is settled by the decisions of this Court that, except in the case of a fugitive surrendered by a foreign government, there is nothing in the Constitution, treaties or laws of the United States which exempts an offender, brought before the Courts of a State for an offense against its laws, from trial and punishment, even though brought from another State by unlawful violence or by abuse of legal process. *Kerr* v. *Illinois,* 119 U. S., 436; *Mahon* v. *Justice,* 127 U. S., 700; *Cook* v. *Hart,* 146 U. S., 183. * * * If a fugitive may be kidnapped or unlawfully abducted from the State or country of refuge, and be thereafter tried in the State to which he is forcibly carried, without violating any right or immunity secured to him by the Constitution and laws of the United States, it is difficult to understand upon what sound principle can be rested the denial of a State's authority or jurisdiction to try him for another or different offense than that for which he was surrendered. *· * * But aside from this, it would be a useless and idle procedure to require the State having custody of the alleged criminal to return him to the State by which he was rendered up in order to go through the formality of again demanding his extradition for the new or additional offenses on which it is desired to prosecute him. The

Constitution and the laws impose no such condition or requirement upon the State. Our conclusion is that upon a fugitive's surrender to the State demanding his return in pursuance of national law he may be tried in the State to which he is returned for any other offense than that specified in the requisition for his rendition, and that in so trying him against his objection no right, privilege or immunity secured to him by the Constitution and laws of the United States is thereby denied."

The principles thus declared are applicable to this case, and the decision must be followed by the Court. Cooley's Const. Lim., 18. It is but just to his Honor that we should state that when he made this ruling there was, as we have seen, much conflict of judicial opinion upon the question, and that the case of Lascelle had not then been decided.

For the reasons given the judgment must be

Reversed.