(April 14, 1906.)

## In re CHARLES H. MOYER.

[85 Pac. 190.]

HABEAS CORPUS—INTERSTATE EXTRADITION—ILLEGAL RENDITION—HOW
AND WHEN CAN BE QUESTIONED—MANNER OF ARREST—MOTIVES
FOR ISSUANCE OF EXECUTIVE WARRANT—FUGITIVE FROM JUSTICE—
JURISDICTIONAL QUESTION—DETERMINATION QUASI JUDICIAL—WHEN
CEASES TO BE FEDERAL QUESTION.

1. Where the accused is personally within the jurisdiction of the
demanding state and there applies to the court for his discharge
on *habeas corpus*, he cannot raise the question as to whether or not
he has been, as a matter of fact, a refugee from the justice of that
state within the meaning of the federal constitution and the act of
Congress authorizing interstate extradition.

2. The action and conduct of the chief executive of the state in
which the accused was found in issuing the executive warrant and
of the executive and ministerial officers acting in aid of his war-
rant, is a matter for the consideration of the courts of his state,
subject to the reviewing authority of the federal courts in so far
as the federal question is involved, and is not a question open to
examination or consideration by the courts of a foreign state.

3. The warrant of the chief executive of the state surrendering
an accused person, whether issued lawfully or unlawfully, has
accomplished its purpose and become *functus officio* as soon as the
accused is delivered into the jurisdiction of the demanding state,
and the regularity of its issuance thereupon ceases to be a question
for judicial inquiry on application by the prisoner for his discharge,
where he is at the time held under due and legal process issued
out of a court of competent criminal jurisdiction of the demanding
state.

4. The motives which prompt the chief executive of a state to
issue his warrant for the rendition of a prisoner are not proper
subjects of judicial inquiry. Such inquiry would be opposed to pub-
lic policy and the freedom of action of the executive department
of government.

5. The fact that a wrong has been committed against a prisoner
in the manner or method pursued in subjecting his person to the
jurisdiction of a state, against the laws of which he is charged
with having transgressed, can constitute no legal or just reason
why he should not answer the charge against him, when brought

before the proper tribunal. The commission of an offense in his arrest does not expiate the offense with which he is charged.

6. The jurisdiction of a court in which an indictment is found or an accusation is lodged is not impaired by the manner in which the accused is brought before the court.

7. In interstate extradition the prisoner is only held under the extradition process until such time as he reaches the jurisdiction of the demanding state, and is thenceforth held under the process issued out of the courts of that state, and it necessarily follows that there is no longer a federal question involved in his detention.

8. Return of the officer and answer of the prisoner examined and considered in this case, and, *held,* that the prisoner is being detained under process duly and regularly issued by a court of competent criminal jurisdiction, and that he is not entitled to a discharge on *habeas corpus.*

(Syllabus by the court.)

APPLICATION of Charles H. Moyer, for a writ of *habeas corpus.* Writ issued and case heard and considered on the return and supplemental return of the officer and the answer of the prisoner, after which *writ is quashed* and the prisoner remanded to the custody of the officer.

Fred Miller, John F. Nugent and Edmund F. Richardson, for Petitioner.

If the accused was only constructively in the state committing a crime against it, although not personally within its borders, he has not fled from it and is not a fugitive from justice. (19 Ency. of Law & Pr. 87.)

A citizen of one state, charged in a requisition with the constructive commission of crime in another state, from which in fact he had never fled, is not a fugitive from justice, and the determination of the governor as to the sufficiency of the facts alleged is not conclusive. (*Jones v. Leonard,* 50 Iowa, 106, 32 Am. Rep. 116; *Wilcox v. Nolze,* 34 Ohio St. 520.)

In the case of *In re Mohr,* 73 Ala. 503, 49 Am. Rep. 63, a person was arrested as a fugitive from justice on a warrant issued by the governor of Alabama, in pursuance of a request by the governor of Pennsylvania, based on an indictment

found in that state, charging false pretenses. It was held that he might show, on *habeas corpus*, that he was not in the state of Pennsylvania at the time the offense is alleged to have been committed, and that he has never been there since.

In the case of *State of Tennessee v. Jackson*, the United States district court decided (36 Fed. 259, 1 L. R. A. 370) that the person charged must be a fugitive from the state in which the crime was committed before the executive authority can be called into action, and where he is delivered up to the authorities of that state on a request based on a false affidavit that he is a fugitive, he will be released on *habeas corpus*.

The warrant of the executive is not conclusive of the fact of flight. The courts, upon *habeas corpus*, may inquire and determine the fact; it is at most but *prima facie* evidence. (*In re Cook*, 49 Fed. 833; *State v. Hall*, 115 N. C. 811, 44 Am. St. Rep. 501, 20 S. E. 729, 28 L. R. A. 289, and citations in notes; *People v. Hyatt*, 172 N. Y. 176, 92 Am. St. Rep. 706, 64 N. E. 825, 60 L. R. A. 774; and *Hyatt v. New York*, 188 U. S. 691, 47 L. ed. 657, 23 Sup. Ct. Rep. 456.)

When it is conceded, or when it is so conclusively proved, that no question can be made that the person was not within the demanding state when the crime is said to have been committed, and his arrest is sought on the ground only of constructive presence at that time in the demanding state, then the court will discharge the defendant. (*Munsey v. Clough*, 196 U. S. 364, 49 L. ed. 515, 25 Sup. Ct. Rep. 282.)

J. J. Guheen, Attorney General, Owen M. Van Duyn, Prosecuting Attorney of Canyon County, and J. H. Hawley, W. E. Borah and W. A. Stone, for the State.

This is not a matter which can be considered on *habeas corpus*, for the reason that the illegality of the arrest in the place from which the parties were taken, or defects in the warrant or other proceedings on which the extradition proceedings were based, cannot entitle such parties to the benefit of the writ; the authorities go so far as to hold that even if the party was kidnaped and brought into a state for trial, that fact is not of

itself sufficient to authorize such party's release, except under demand made by the governor of the foreign state. (*Ex parte Barker*, 87 Ala. 4, 13 Am. St. Rep. 17, 6 South. 7; *Mahon v. Justice*, 127 U. S. 700, 32 L. ed. 283, 8 Sup. Ct. Rep. 1204; *State v. Smith*, 1 Bail. (S. C.) 283, 19 Am. Dec. 679; *State v. Ross*, 21 Iowa, 467; *Dows' Case*, 18 Pa. St. 37; 12 Am. & Eng. Ency. of Law, 607; Church on Habeas Corpus, sec. 462; 19 Cyc. of Pl. & Pr. 99.)

The warrant and papers in this state are in proper form. The duty of the executive of Colorado with reference to them was simply ministerial, and there is no law either in that state or in this, or any law of the United States, that makes it the duty of the arresting officer after the warrant from the foreign state has been issued by its executive, to remain any certain length of time in such foreign state in order that proceedings may be instituted therein by the arrested parties. (*In re Sultan*, 115 N. C. 57, 44 Am. St. Rep. 433, 20 S. E. 375, 28 L. R. A. 294. Also, see notes to *In re Fetter*, 57 Am. Dec. 389.)

AILSHIE, J.—The prisoner, Charles H. Moyer, applied to this court, through his counsel, for a writ of *habeas corpus*, requiring E. L. Whitney, warden of the state penitentiary, to produce the body of the prisoner at a time and place to be designated by the court, and to make true return of the cause or causes of his detention. A writ was thereupon issued, and the warden, at the time designated, produced the body of the prisoner in court, and made return that he was detaining him under order of the probate judge of Canyon county, and for that purpose as the agent of the sheriff of Canyon county. The return contains a certified copy of the order made by the probate judge, wherein it recites that the Canyon county jail is an unfit place for the detention of the prisoner, and orders and directs that he be temporarily detained in the state penitentiary at Boise City. The return further shows that on the twelfth day of February, 1906, a complaint, duly verified, by Owen M. Van Duyn, prosecuting attorney in and for Can-

yon county, was filed with M. I. Church, probate judge of that county, charging the prisoner, Charles H. Moyer, with the crime of murder committed at Caldwell, Canyon county, on the thirtieth day of December, 1905. The return also shows that on the same date a warrant of arrest was duly issued out of the probate court of Canyon county for the apprehension and detention of the accused. The return indorsed on the warrant and made by the sheriff of Canyon county shows that the prisoner was, on the twenty-first day of February, 1906, arrested and taken before the court. It is further shown that at the time of making the return the grand jury of Canyon county was in session, and that the prisoner was held subject to the order of the district court in and for Canyon county, and that he had been from time to time, by order of the court, taken into court to be present at the impaneling of the grand jury. Before the final hearing on the return to this writ, the warden made a supplemental return to the effect that on the seventh day of March, 1906, the grand jury in and for Canyon county found a true bill of indictment against the prisoner, charging him with the commission of the crime of murder, at Caldwell, in Canyon county, on the thirtieth day of December, 1905, and that the indictment was thereupon duly filed in court, and that thereupon a bench warrant issued for the arrest of the accused Charles H. Moyer, and that the same was served, and the prisoner was thereafter, on the ninth day of March, arraigned before the court, and the time for pleading to the indictment was fixed for March 16th; and that the prisoner was thereafter, by the sheriff of Canyon county, returned to the state penitentiary and temporarily placed in charge of the warden thereof for detention, and is now held under such authority. The petitioner answered the return and supplemental return made by the warden, admitting all the material and essential facts contained in the return; he also pleaded further, separate and independent matter, for the purpose of showing that his imprisonment and detention was illegal and unlawful. While quite voluminous, the substance of this additional and independent matter con-

tained in the answer is, that the petitioner is a citizen of the United States and of the state of Colorado, residing in the city and county of Denver, and that he has never been within the state of Idaho at any time since the twenty-eighth day of October, 1905, and that he was not in the state of Idaho on the thirtieth day of December, 1905, and was not a fugitive from the justice of the state of Idaho within the meaning of the federal constitution and the act of Congress providing for interstate extradition, and that he was wrongfully and unlawfully removed from the state of Colorado to the state of Idaho in pursuance of an unlawful combination and conspiracy entered into between the governors of the states of Idaho and Colorado, and the prosecuting attorney of Canyon county; that the governor of Colorado wrongfully and unlawfully honored the requisition of the governor of Idaho, and wrongfully issued his warrant and order for the arrest of the prisoner by the authorities of the state of Colorado, and that the prisoner was neither given time nor opportunity to apply to either the state or federal courts for his discharge prior to his delivery to the authorities within the jurisdiction of the state of Idaho. Counsel for the state moved to strike from the answer of the petitioner all matters leading up to and involving the extradition of the petitioner on the ground that the same is sham and irrelevant matter. After hearing exhaustive argument, this motion was sustained, and it was announced from the bench at the time that a written opinion would thereafter be filed setting forth the views of the court on the questions presented.

It is proper to first observe that the extradition proceedings and process by and under which the prisoner was brought into this state appear in all respects regular and in due form.

With the foregoing statement of the case, we will pass at once to a consideration of the questions of law involved.

We are of the opinion that after the prisoner is within the jurisdiction of the demanding state, and is there applying to its courts for relief, he cannot raise the question as to whether or not he has been, as a matter of fact, a fugitive from the justice of the state within the meaning of the federal constitu-

tion, and the act of Congress. A careful and diligent examination of the many authorities touching upon this subject, and the reasons that exist for invoking the aid of the writ in such cases, convince us that the question as to whether or not a citizen is a fugitive from justice is one that can only be available to him so long as he is beyond the jurisdiction of the state against whose laws he is alleged to have transgressed. It is a remedy which does not go to the merits of the case, and does not involve the inquiry as to whether or not he is in fact guilty or innocent of the offense charged. It is a remedy that merely goes to the question of his removal from the jurisdiction in which he is found to the jurisdiction against the laws of which he is charged with offending. If these views be correct, and we believe they are, it follows that so soon as the prisoner is within the jurisdiction of the demanding state, both the reason and object for invoking this principle of law have ceased and can no longer have any application. It has been held that it ceases to be a federal question so soon as the prisoner invokes its aid within the state from which he is alleged to have fled. (*In re Cook*, 49 Fed. 841.) It must also necessarily follow that the courts of the state demanding the prisoner have no jurisdiction to inquire into the acts of the executive of the state delivering the prisoner. The action and conduct of the chief executive of the state in which the prisoner was found, and all of the executive and ministerial officers acting in aid of his warrant is a matter for the consideration of the courts of his state, subject to the reviewing authority of the federal courts in so far as the federal question is involved. The warrant of the chief executive of the state surrendering the prisoner, whether issued lawfully or unlawfully, has accomplished its purpose and becomes *functus officio*, so soon as the prisoner is delivered into the jurisdiction of the demanding state, and its validity and the regularity of its issuance thereupon cease to be questions open to the consideration of the courts of the demanding state.

The prisoner was regularly charged with the commission of a crime in Idaho, and against her laws. The governor of Colorado honored the requisition from the governor of Idaho, and

thereupon duly and regularly issued his warrant for the arrest and surrender of the accused to the agent of the state of Idaho. This action of the Coiorado governor was at least *quasi judicial* (*In re Cook,* 49 Fed. 841); it amounts to a determination that the accused was substantially charged with the commission of a crime and was a fugitive from justice. (*Roberts v. Reilly,* 116 U. S. 80, 29 L. ed. 544, 6 Sup. Ct. Rep. 291; *Cook v. Hart,* 146 U. S. 183, 36 L. ed. 934, 13 Sup. Ct. Rep. 40.) The motives which prompted the governor of a state to take such action or make such determination are not proper subjects of judicial inquiry. Such inquiry would be opposed both to the plainest principles of public policy and the freedom of action by the executive within the constitutional authority of that department of government. Jurisdiction to take the action complained of is the test, and the jurisdictional facts are subject to review by the federal courts and courts of the surrendering state where they are applied to before the state whose laws it is charged have been violated acquires jurisdiction of the person of the accused. In the latter case the object has been accomplished, and as has been held in several cases, there is no process or authority for returning the prisoner to the state in which he was found. (*Mahon v. Justice,* 127 U. S. 700, 32 L. ed. 283, 8 Sup. Ct. Rep. 1204; approved in *Cook v. Hart,* 146 U. S. 183, 36 L. ed. 939, 13 Sup. Ct. Rep. 40; *In re Moore,* 75 Fed. 834.)

One who commits a crime against the laws of a state, whether committed by him while in person on its soil or absent in a foreign jurisdiction, and acting through some other agency or medium, has no vested right of asylum in a sister state (*Mahon v. Justice, supra; Lascelles v. Georgia,* 148 U. S. 543, 37 L. ed. 551, 13 Sup. Ct. Rep. 687; *Ker v. Illinois,* 119 U. S. 436, 30 L. ed. 421, 17 Sup. Ct. Rep. 225; *In re Moore,* 75 Fed. 824), and the fact that a wrong is committed against him in the manner or method pursued in subjecting his person to the jurisdiction of the complaining state, and that such wrong is redressible either in the civil or criminal courts, can constitute no legal or just reason why he himself should not an-

swer the charge against him when brought before the proper tribunal. The prisoner does not represent in his person the sovereignty of either the demanding or surrendering state and is in no position to speak for either; on the other hand, if any offense was committed in course of his rendition, it was clearly an offense against the laws of one or both of those states; but neither state is here complaining. (*People v. Pratt*, 78 Cal. 349, 20 Pac. 733.)

No case has been called to our attention, and, in fact, we have been unable to find any instance where the prisoner has alleged as a ground for his discharge a like state of facts to those set up in the answer in this case, and to which the motion is here directed. We have, however, examined several authorities in which the same course of reasoning adopted by the courts, in holding that the prisoner should not be discharged, is equally, and as logically, applicable to the facts of this case.

Professor Peabody, sometime lecturer on Criminal Law, before the Harvard Law School, in his text on Interstate Extradition, at page 99, 19 Cyclopedia, states the general principle touching the rights of prisoners illegally brought into a jurisdiction as follows: "It is not a cause for exemption from prosecution for a crime that the accused was illegally arrested in another state and unlawfully brought within the jurisdiction of the state against which he offended; he is not protected from prosecution even if he is kidnaped in the other state and brought into the state without a semblance of right. It follows, therefore, that he is not wronged by being subjected to its jurisdiction, although the requisition proceedings were not strictly legal. As the state to which a person has been illegally brought may hold him to answer for his offenses against it, it may arrest and surrender him on extradition proceedings to answer for his offenses against another state. The state from which he was wrongfully taken has no redress except to demand the extradition of the abductors that they in turn may be prosecuted by it."

In *Mahon v. Justice, supra,* a case in which a controversy arose between the states of West Virginia and Kentucky, over

the kidnaping of the prisoner Mahon from the state of West
Virginia, Justice Field, after stating the nature of the contro-
versy, said: "The only question, therefore, presented for our
determination, is whether a prisoner indicted for a felony in
one state, forcibly abducted in another state and brought to
the state where he was indicted, by parties acting without
warrant or authority of law, is entitled under the constitution
or laws of the United States, to release from detention under
the indictment by reason of such forcible and unlawful ab-
duction." In passing upon the question thus stated, that dis-
tinguished jurist said: "As to the removal from the state of
the fugitive from justice in a way other than that which is pro-
vided by the second section of the fourth article of the constitu-
tion, which declares that 'a person charged in any state with
treason, felony, or other crime, who shall flee from justice, and
be found in another state, shall, on demand of the executive
authority of the state from which he fled, be delivered up, to
be removed to the state having jurisdiction of the crime,' and
the laws passed by Congress to carry the same into effect—
it is not perceived how that fact can affect his detention upon
a warrant for the commission of a crime within the state to
which he is carried. The jurisdiction of the court in which
the indictment is found is not impaired by the manner in
which the accused is brought before it. There are many ad-
judications to this purport cited by counsel on the argument,
to some of which we will refer." The opinion closes as fol-
lows: "So in this case we will say that, whatever effect may
be given by the state court to the illegal mode by which the
defendant was brought from another state, no right secured
under the constitution or laws of the United States was vio-
lated by his arrest in Kentucky and imprisonment there, upon
the indictment found against him for murder in that state."

In *Re Cook, supra,* the United States circuit court had
under consideration the validity of an extradition granted by
the governor where the party in fact had not been in the de-
manding state at the time the offense was committed, and the
court, speaking of the validity of the executive warrant, said:
"His warrant, unassailed by competent authority, is complete

justification for the arrest and surrender of the alleged fugitive. When so delivered, by virtue of such warrant, his surrender is lawful, and the demanding state obtains rightful possession of his person, and may lawfully subject him to its criminal process for the offense charged. The executive warrant has then spent its force. It is no longer operative. The alleged offender is no longer subjected to deprivation of liberty by virtue thereof, but is rightfully held under the process of the state. When that has happened, no federal question remains. . . . . The fact of flight may be in a sense jurisdictional to removal, as one says a criminal court has jurisdiction only of crime. But such court has jurisdiction to determine whether a certain act charged to have been committed is or is not a crime. Its decision therein, although erroneous, is not void. So here, the jurisdiction to determine the fact of flight is lodged with the executive. He has jurisdiction of the subject matter. His warrant is valid until his determination of the fact of flight is properly reversed. When, therefore, such valid warrant has been executed, the surrender thereunder is lawful, and the party lawfully subjected to the state jurisdiction." The later case was appealed to the supreme court, and in *Cook v. Hart,* 146 U. S. 183, 36 L. ed. 934, 13 Sup. Ct. Rep. 40, the lower court was affirmed, and Justice Brown, who wrote the opinion on appeal, made the following observations: "It is proper to observe in this connection that, assuming the question of flight to be jurisdictional, if that question be raised before the executive or the courts of the surrendering state, it is presented in a very different aspect after the accused has been delivered over to the agent of the demanding state, and has actually entered the territory of that state, and is held under the process of its courts." In *Ex parte Johnson,* 167 U. S. 120, 42 L. ed. 103, 17 Sup. Ct. Rep. 735, the court made the distinction between the service of civil process and that of criminal process, where the party had been wrongfully brought into the jurisdiction, and said: "Indeed, there are many authorities which go to the extent of holding that in criminal cases a forcible abduction is no sufficient reason why the party should not answer when brought within

the jurisdiction of the court which has the right to try him
for such an offense and presents no valid objection to his trial
in such court. . . . . The law will not permit a person to be
kidnaped or decoyed within the jurisdiction for the purpose
of being compelled to answer to a mere private claim, but in
criminal cases the interests of the public override that which
is, after all, a mere privilege from arrest.'' To the same ef-
fect, see *Dow's Case,* 18 Pa. St. 37; *Ex parte Ker,* 18 Fed. 167;
*State v. Smith,* 1 Bail. (S. C.) 283, 19 Am. Dec. 697; 12 Am.
& Eng. Ency. of Law, 607; *Eaton v. West Virginia,* 91 Fed.
760, 34 C. C. A. 68; *Kingen v. Kelley,* 3 Wyo. 571, 28 Pac.
38, 15 L. R. A. 177; *Ex parte Barker,* 87 Ala. 4, 13 Am. St.
Rep. 17, 6 South. 7; *State v. Ross,* 21 Iowa, 467; *State v.
Patterson,* 116 Mo. 505, 22 South. 696; *Bookin v. State,* 26
Tex. App. 121, 9 S. W. 737; *State v. Glover,* 112 N. C. 896, 17
S. E. 925.

Counsel for petitioner lay much stress on the proposition
that neither an individual nor the state can be allowed to gain
an advantage by means of an unlawful or wrongful act. That
proposition is true, but to gain an advantage means to obtain
a superiority of position or opportunity which would not ap-
pear to have been done in such a case as this, admitting all
the facts charged to be true. Where the state accuses a per-
son of the commission of an offense against its laws, the mere
apprehension of the accused, although in an unlawful manner,
and subjecting him to the jurisdiction of the courts to answer
the charge cannot amount to a legal advantage any more than
if the accused had voluntarily surrendered himself to the au-
thorities. The wrongful or unlawful means employed in mak-
ing an arrest, however criminal they might be, could not be
chargeable to the sovereignty, which can commit no crime,
but would be the crime of the individual who committed the
act and would furnish no reason or justification for discharg-
ing the prisoner when brought before the court. If, therefore,
a crime should be committed by any person in abducting, ap-
prehending or arresting the accused, such person may be held
to answer in the proper jurisdiction for the commission of the

offense.   But the commission of the latter offense does not expiate the former.

Numerous authorities are cited on behalf of petitioner to the effect that a lawful rendition cannot be had of one who was not in fact within the demanding state when the offense is charged to have been committed.   The latest and highest authority that has been brought to our attention on this phase of the case is *Hyatt v. New York*, 188 U. S. 691, 47 L. ed. 657, 33 Sup. Ct. Rep. 456; S. C., 172 N. Y. 176, 92 Am. St. Rep. 706, 64 N. E. 825, 60 L. R. A. 774.   As we have heretofore said, the question as to whether or not the prisoner was in fact a refugee from justice cannot arise at this time in the case at bar.   Except for the construction placed on the second clause of section 2 of the fourth article of the constitution of the United States, and section 5278 of the United States Revised Statutes, by the highest court of the land, we should undoubtedly incline to the belief that they were designed and intended to authorize the extradition of any person who has offended against the laws of one state and is thereafter found in another state. It would seem that by the language: "Who shall flee from justice," is rather meant a flight from a punishment—a penalty or condition which would follow capture and conviction— than a flight from a *place* or the *territorial limits* of the outraged commonwealth.   The pursuing hand of justice demanding vindication and vengeance is a much stronger inducement to flight than the mere discomforts of place or the horrors or dislike of state lines.   While the belief just expressed is the unanimous view of this court as to the real purpose and intent of the extradition clause of the federal constitution, it amounts to the merest observation in this case and in no respect influences its decision.   We are not unmindful of the fact that the almost uniform current of authority, both federal and state, is to the effect that the flight must be from a *place*, namely, from the *territorial limits* of the state demanding the prisoner.   It is worthy of note, however, that under that line of authority, as was suggested on the argument of this case, an assassin on the Oregon bank of the great waterway that marks our western boundary might, by firing across

Opinion of the Court—Ailshie, J.

the stream, murder numbers of our citizens, and be exempt from extradition, and go free from punishment. In this respect, the views expressed by Mr. Justice Clark in the extraordinary case of *State v. Hall*, 115 N. C. 811, 44 Am. St. Rep. 501, 20 S. E. 729, 28 L. R. A. 293, are worthy of consideration.

Counsel place considerable stress on *In re Robinson*, 29 Neb. 135, 26 Am. St. Rep. 378, 45 N. W. 267, 8 L. R. A. 398, a case where the supreme court of Nebraska ordered a prisoner discharged because he had been forcibly brought into the state without requisition process. That case does not meet the facts of the case at bar; besides, it seems to rest on the rule adopted in civil cases rather than that applied to criminal cases. The statement there made as to the current of authority on the question of interstate extradition leaves it open to the criticism that it is not a sound or carefully considered case. In fact, the weight of authority is entirely the other way, as will be seen from an examination of *Lascelles v. State*, 148 U. S. 537, 37 L. ed. 552, 13 Sup. Ct. Rep. 687; *Lascelles v. State*, 90 Ga. 347, 35 Am. St. Rep. 216, 220, 16 S. E. 945, 946. See 11 Rose's Notes on U. S. Rep., p. 239.

The motion having been sustained, the case remains here on the answer of the warden which is admitted to be true. The prisoner has been indicted on the charge of murder; and for the purposes of this case, whether as a principal or accessory, is immaterial under our statute (Rev. Stats., secs. 7679, 7698; *Territory v. Guthrie*, 2 Idaho, 432, 17 Pac. 39) ; as is also the question as to whether he was within or without the state at the time of the alleged commission of the offense. (Rev. Stats., secs. 6331, 7481.) The proceedings appear regular on the face of the returns, and in conformity with the laws of the state, and since the prisoner is being held under process duly and regularly issued by a court of competent criminal jurisdiction, we are commanded by statute to remand him to custody. The writ is quashed, and the prisoner is remanded to the custody of the officer.

Stockslager, C. J., and Sullivan, J., concur.