[EDITORS' NOTE: AGOP opinion No. 06-06 reads in conjunction with opinion No. 06-08.]
Question Presented and Conclusion
 Question: This office has been asked for a formal opinion as to whether "the Governor of Colorado may legally authorize the Colorado National Guard to use lethal force when protecting infrastructure deemed critical to the life, health or welfare of the State of Colorado."
Answer: When infrastructure critical to the life, health or safety of Colorado citizens is threatened, National Guard troops acting under the Governor's direction may use force, including deadly force, necessary to protect the infrastructure — and thereby the public — from serious harm.
Discussion
The Governor's authority to call out the National Guard derives generally from both statute and constitution. While there is no explicit grant of authority to use deadly force from either source, such power is implicit in a variety of sources from which the Governor and the National Guard derive their power to act when necessary to preserve public health and safety. *Page 2 
 I. Constitutional authority as Commander in Chief of StateMilitia
The Governor's authority to call out the National Guard comes primarily from the Governor's constitutional power as Commander-in-Chief of the State's Militia. Article 4, § 5 of the Colorado Constitution provides that the Governor "shall be the commander-in-chief of the military forces of the state, except when they shall be called into the actual service of the United States. He shall have the power to call out the militia to execute the laws, suppress insurrection or repel invasion." In In re Fire and Excise Commissioners, 36 P. 234 (1894), the Colorado Supreme Court emphasized that the Constitution "expressly provides `that the military shall always be in strict subordination to the civil power.'" 36 P. at 241 (quoting Art. 2, Section 22, Colo. Const.). Thus, the National Guard's authority to act derives from the Governor's constitutional authority as commander-in-chief. In In re Fireand Excise Commissioners, the Court stated that if a power "cannot be lawfully exercised by the governor acting in his civil capacity, a fortiori is the use of military force to that end by him as commander in chief unauthorized." In re Fire and Excise Comm'rs, 36 P. at 241.
II. Governor's statutory duty to protect life and property
Colorado statutes specifically authorize the Governor to order the state militia to protect life and property. Section 28-3-104, C.R.S., provides that the Governor "shall be the commander-in-chief of the military forces except so much thereof as may be in the actual service of the United States and may employ the same for the defense or relief of the state, the enforcement of its laws, the protection of life andproperty therein, the implementation of the Emergency Management Assistance Compact, and for the training of the military forces for all appropriate state missions." (emphasis added). Therefore, the Governor clearly has authority to call out the National Guard for the protection of both life and property in Colorado. This authority does not necessarily require a declaration of insurrection or emergency.
The express duty to protect Colorado life and property also carries with it implied powers necessary to carry out that responsibility. InIn re Moyer, 85 P. 190 (1904), the Colorado Supreme Court upheld as incident to the authority to suppress an insurrection the lengthy detention of one of its apparent leaders. The court held that when an express power is conferred by the Constitution, "all necessary means may be employed to exercise it, which are not expressly or impliedly prohibited." In re Moyer, 85 P. at 193. The Court further held that the Constitution must be given "that construction of which it is susceptible which will tend to maintain and preserve the government of which it is the foundation, and protect the citizens of the state in the enjoyment of their inalienable rights." Id.
Accordingly, while the authority to order the use, where appropriate, of lethal force in the protection of life and property is not expressly stated in Constitution or statute, the authority must be implied. Depending on the degree and the immediacy of any danger to human health and safety, circumstances may arise in which lethal force is the only available means to prevent great public harm or loss of life. Without the authority to order the use of lethal force when necessary, as dictated by the facts, to prevent great public harm or loss of life, the duty to protect life and property, would be hollow. The degree of force that may be used depends, however, on the nature of the "critical state infrastructure," the specific danger posed to the structure, and the harm that would result from its destruction. The types of structures that may be "critical" to the life, health and safety of Coloradoans are numerous. Examples include various health facilities, particularly stores of medical supplies or vaccines deemed critical to life and safety in the event of an emergency, and unique intelligence facilities such as the Cheyenne Mountain Operations *Page 3 
Center. Destruction or damage to these facilities could undeniably have a detrimental effect on the life, health or safety of Colorado citizens. Whether other facilities would qualify requires a case-by-case analysis.
III. Military commanders are specifically authorized to use deadlyforce in the enforcement of the law.
Colorado statute authorizes a military commander to use deadly force to enforce the law, prevent mob action or suppress an insurrection:
 The commanding officer of any of the military forces engaged in the suppression of an insurrection, the dispersion of a mob, or the enforcement of the laws shall exercise his or her discretion as to the propriety of firing upon or otherwise attacking any mob or other unlawful assembly; and, if he or she exercises his or her honest judgment thereon, he or she shall not be liable in either a civil or a criminal action for any act done while on such duty. No officer or enlisted person shall be held liable in either a civil or criminal action for any act done under lawful orders and in the performance of his or her duty.
Section 28-3-501, C.R.S. The statute grants immunity for the decision to use force, when such decision is based on the commander's "honest judgment." While this immunity is broad, it is not absolute. For instance, it would not foreclose liability under federal civil rights statutes such as 42 U.S.C. § 1983. In addition, it primarily immunizes good faith actions of officials in response to mob violence. The question posed here does not specifically include a response to mob attacks on critical infrastructure. However, to the extent such actions might occur, wide discretion is vested in the commanding officer to respond with the use of force, lethal or otherwise.
IV. Acting as civil law enforcement, the Guard may use lethal force tostop an individual from endangering human life or inflicting seriousbodily injury.
In the enforcement of the law when ordered by the Governor, the National Guard's authority to use force is equivalent to that of civilian peace officers. Colorado caselaw has compared the Guard's authority to that of civil authorities. See In re Moyer 85 P. 190, 193
(Colo. 1904) (Governor, in employing the militia to suppress an insurrection, acts in his capacity as the chief civil magistrate of the state, and, although exercising his authority conferred by the law through the aid of the military under his command, he is acting in a civil capacity). "The power and authority of the militia in such circumstances are not unlike that of the police of a city, or the sheriff of a county, aided by his deputies or posse comitatus in suppressing a riot." Id.
It is therefore useful to consider the statutory authority given to the police in Colorado to use force. Section 18-1-707 authorizes police to use force in several circumstances:
 (2) A peace officer is justified in using deadly physical force upon another person for a purpose specified in subsection (1) of this section only when he reasonably believes that it is necessary:
 (a) To defend himself or a third person from what he reasonably *Page 4 
believes to be the use or imminent use of deadly physical force; or
 (b) To effect an arrest, or to prevent the escape from custody, of a person whom he reasonably believes:
 (I) Has committed or attempted to commit a felony involving the use or threatened use of a deadly weapon; or
 ***
 (III) Otherwise indicates, except through a motor vehicle violation, that he is likely to endanger human life or to inflict serious bodily injury to another unless apprehended without delay.
Colorado law thus clearly authorizes law enforcement to use deadly force when necessary to apprehend an individual endangering human life or inflicting serious bodily injury. When that danger arises from actions intended to destroy a building or critical infrastructure, lethal force is authorized, if necessary, to apprehend the person and thereby prevent the act.
The statute does not require that the danger to human life resulting from the destructive act be immediate. If, for instance, damage to critical infrastructure would not be reparable before human life or health is seriously endangered, deadly force would be authorized. For example, where an individual is attempting to ram the entrance of a health facility with an automobile, lethal force is justified.
The number and type of situations that would justify the use of deadly force is impossible to predict. Undoubtedly, the particular facts of any such situation will be unique. Therefore, once the Governor has generally authorized the use of deadly force for the protection of critical infrastructure, authorized personnel at the scene must assess any threat to determine whether the danger to public health and safety is so great as to justify use of deadly force. The assessment will inevitably involve consideration of the immediacy of the threat, its certainty and its magnitude. But with respect to the Governor's authority to authorize the legitimate use of lethal force to protect life, health and the public, such authority is well grounded in Constitution and statute.
V. Lethal force is authorized to prevent the destruction of a buildingby arson.
Deadly force is specifically authorized in Colorado to prevent the commission of first degree arson. Section 18-1-705, C.R.S., provides:
 A person in possession or control of any building, realty, or other premises . . . is justified in using reasonable and appropriate physical force . . . when and to the extent that it is reasonably necessary to prevent or terminate what he reasonably believes to be the commission or attempted commission of an unlawful trespass. . . . However, he may use deadly force only in defense of himself or another as described in section 18-1-704, or when he *Page 5 
reasonably believes it necessary to prevent what he reasonably believes to be an attempt by the trespasser to commit first degree arson.
The crime of first degree arson includes more than just burning a structure. Under section 18-4-102, first degree arson, is committed when a person "knowingly sets fire to, burns, causes to be burned, or by the use of any explosive damages or destroys, or causes to be damaged or destroyed, any building or occupied structure of another without his consent." Therefore, use of deadly force is authorized to prevent the intentional damage or destruction of a "building or occupied structure" by fire or explosive device. For deadly force to be authorized-whether it be by a citizen, civil law enforcement, or the National Guard-it should be apparent that an incendiary or explosive will be used against a building or occupied structure unless deadly force is used. In circumstances where non-lethal force will prevent the arson's commission, the lesser force should be used first.
CONCLUSION
For the reasons indicated above, I conclude that the Governor has the authority to employ the National Guard for the protection of critical state infrastructure in Colorado, and may authorize the Guard to use lethal force when necessary for the protection of such infrastructure, the destruction of which would pose a danger to the life, health and safety of Colorado citizens.
Issued this 29th day of August, 2006.
_________________________
JOHN W. SUTHERS
Colorado Attorney General

 *Page 1